McQUADE *v.* WILCOX.

1. DEEDS—BUILDING RESTRICTIONS MUTUALLY BINDING—NEGATIVE EASEMENT.

Where the owner of a subdivision, in each deed issued, restricted the use to be made of the lot conveyed, reciting that the restrictions were for the benefit of all present and future owners in the subdivision, said restrictions were mutual, and she and the lot which she had reserved for herself for residential purposes were bound by the same instrument which bound her grantees and the lots conveyed to them, and as to her lot created a negative easement.

2. SAME—RECORDING DEEDS—CONSTRUCTIVE NOTICE—BONA FIDE PURCHASER.

The placing on record of said deeds, *held*, to give constructive notice of said negative easement on said lot, so that the purchaser of same was not a *bona fide* purchaser, but took subject to the rights of the other owners to have said restrictions enforced.

3. SAME—BUILDING RESTRICTIONS—INJUNCTION.

Where there was no laches on the part of plaintiffs, they having moved as soon as they learned of the sale of the lot and the contemplated violation of the restrictions, they were entitled to have same restrained although defendant expended some money and entered into engagements for the carrying out of its plans.

Appeal from Oakland; Covert (Frank L.), J.    Submitted June 9, 1921. ; (Docket No. 34.)    Decided July 19, 1921.

Bill by George J. McQuade and others against Mary M. Wilcox and the Shelbourne Company to enjoin the violation of certain building restrictions.    From a decree for plaintiffs, defendants appeal.    Affirmed.

Authorities discussing the question as to whether multiple residence structures is violation of restrictive covenant in deed that property shall be used for residence purposes only are collated in a note in 45 L. R. A. (N. S.) 728.

*Andrew L. Moore* and *John C. Brondige,* for plaintiffs.

*Pelton & McGee* and *Peter B. Bromley,* for defendant Wilcox.

*Finkelston & Lovejoy,* for defendant Shelbourne Co.

FELLOWS, J.   In 1910 defendant Mary Millington Wilcox was the owner of 105 acres of farm land lying along Woodward avenue at the 10-mile road.   It was over in Oakland county and near Royal Oak.   She and her husband, an attorney then practicing in Detroit, conceived the idea of platting a portion of it for a high class residential subdivision.   The plat was prepared and recorded.   Its residential and restricted character was made the subject of advertisement and pointed out in conversation as an inducement to prospective purchasers.   A general plan was adopted to make it a high class restricted residential district.   A considerable number of men, many of them with children growing up, desiring a home in such a district purchased lots.   Substantial homes were built and an additional subdivision was platted adjoining it.   To insure and preserve the residential character of the subdivisions substantially uniform restrictions were inserted in the deeds executed by Mrs. Wilcox to the purchasers.   We quote the restrictions found in the original conveyance of the lot now owned by plaintiffs McQuade:

"It is agreed that said lot shall be used for residence purposes only, that only one (single) residence shall be placed thereon, the value of which shall be not less than $3,000, the front wall thereof to be at least 50 feet from the front line of the lot and the side wall not less than 20 feet from the side line of the lot and all other buildings in the rear of the lot and at least 150 feet from the street line.   A sewer may be made and perpetually maintained along the

rear line of the lots in this block whenever the owners of a majority of the frontage of lots so desire for which each of the then owners of property adjoining said sewer line agrees to pay the *pro rata* part of its cost according to the frontage on said sewer line. These conditions are for the benefit of all present and future owners of property in this subdivision and are to remain in force until July 1, 1935, and shall then terminate."

All of the deeds executed by Mrs. Wilcox are not in the printed record. Many of them were introduced in evidence in the court below. It is insisted by defendants' counsel that most or all of them use the word "block" instead of "subdivision" in the last sentence just quoted. We do not find this to be the case in the original deed to the property of plaintiffs Stanton. The language there found is as follows:

"These conditions are for the benefit of all present and future owners of property in this subdivision and are agreed to by all such owners and are to remain in force until July 1, 1935, and shall then terminate."

The original deeds through which plaintiff Hewitt and plaintiff Bogart claim use the word "block" but both of these lots are in the same block, if it may be said there are blocks on the plat, as the Wilcox lot, so that this difference in the word used becomes unimportant. As we understand the record the deeds all contained substantially the same restrictions.

Lot 2 on the plat is a very large lot said to contain 4 acres. On it is the Wilcox home, built before the platting. It is a large substantial residence and faces Woodward avenue. After substantially all the lots in the subdivision had been sold and expensive residences had been erected and improvements made upon them, making the neighborhood a high class, residential district, all in conformity with the restrictions and without a breach by any of the purchasers or their grantees, Mrs. Wilcox on May 29, 1919, entered into

a contract with one Ben B. Jacob, a real estate dealer of Detroit, to sell him the Wilcox home together with part of lot 2 for $47,500 to be used for restaurant or café purposes with this clause in the contract:

"Music, dancing and other legal amusements and uses are permitted."

Mr. Jacob transferred the contract to the defendant Shelbourne Company, a corporation organized for the purpose of owning and operating the restaurant. There seems to have been a fruitless attempt to adjust differences and this bill was filed by resident owners to enforce the restrictions.

The testimony in this ample record is convincing that to allow the defendants to transfer the palatial Wilcox home into a restaurant, no matter of how high a grade, would be subversive of every purpose prompting the restrictions, would reduce the value of plaintiffs' property and that of other residents of the subdivision thousands of dollars, and would destroy the high class, residential character of the neighborhood which induced the residents to move there and to expend their money in developing. We recognize the rule that in construing restrictions ambiguous expressions must be taken most strongly against those seeking to enforce them, but we perceive no ambiguity in the ones before us, hence no necessity to resort to rules of construction. By each deed executed by Mrs. Wilcox she restrained the use to be made of the lot sold, and by accepting it each grantee and the lot conveyed in each deed became bound by these restrictions. By each of these deeds she covenanted that the restrictions were for the benefit of all present and future owners. She was the present owner of lot 2. By each deed she restricted the use to which the lot sold could be put, and by the same instrument restricted a different use of her own lot. The restric-

tions were mutual. Her grantees and the land conveyed were bound and by the same instrument she and her residential lot were bound. When made the restrictions were alike beneficial to her and her grantees and she cannot now, having accepted the benefits of the restrictions, and the purchase price enhanced by them, disregard her own covenant and free her own land from its effect. Upon this record a clear case for the relief prayed is made against defendant Wilcox. We do not deem it necessary to review the law of building restrictions. Numerous cases involving them and the right to their enforcement will be found in the recent reports of this court; among them see *Allen* v. *City of Detroit*, 167 Mich. 464 (36 L. R. A. [N. S.] 890) ; *Erichsen* v. *Tapert*, 172 Mich. 457; *Frink* v. *Hughes*, 133 Mich. 63; *Misch* v. *Lehman*, 178 Mich. 225; *Schadt* v. *Brill*, 173 Mich. 647 (45 L. R. A. [N. S.] 726) ; *Moore* v. *Curry*, 176 Mich. 456; *Davison* v. *Taylor*, 196 Mich. 605; *Swan* v. *Mitshkun*, 207 Mich. 70. The case of *Williams* v. *Lawson*, 188 Mich. 88, most strongly relied upon by counsel for defendant Wilcox is clearly distinguishable from the instant case. In that case there were certain restrictions on lots on the south side of the street; it does not appear that there were any on those on the north side of the street, at least there were none on the lot involved. The restrictions themselves on the lots on the south side of the street did not show that they were made applicable to the other lots; nor does it appear that the grantors covenanted and agreed that their remaining property or all the lots should be subject to the same restrictions. It was sought to show a general plan, but if such plan had been formulated defendant had no notice of it. In the instant case there was a general plan, one originated by defendant Wilcox and her husband, one of which she had knowledge, and such general plan was incorporated in every deed

she executed. *Casterton* v. *Plotkin*, 188 Mich. 333, also relied upon, is likewise distinguishable. There the lots were restricted to residence purposes only, and the erection of an apartment house was held not to offend the restrictions. But the moving parties there were subsequent purchasers under restrictions not originally imposed on defendant's title.

There is testimony in the record that there are business places on Woodward avenue across the street from these subdivisions and in the vicinity and that others are being erected, but this testimony is not convincing that the character and environments of this locality have so changed since the platting of this property as to make it inequitable to enforce the restrictions. As was said by Chief Justice STEERE, speaking for the court in *Moore* v. *Curry, supra*:

"The only equitable consideration for refusing this relief, under present conditions, is that the lots on Woodward avenue would sell for more with the restrictions removed. This is not sufficient.

"No such radical change has been shown in the environments and character of the neighborhood in which the restricted district is situated as to invoke the limitation contended for and justify the court in refusing at this time the relief asked."

This leaves for consideration the contention of defendant Shelbourne Company that it purchased without notice of the restrictions and is, therefore, not bound by them. This presents the most difficult question in the case. Before considering the legal question let us re-state some of the pertinent facts: Defendant Wilcox originated the general plan of restricting all the lots in the plat to use for residential purposes only; this included the lot upon which her home was located; this plan she incorporated in the deeds executed by her which were recorded. By these restrictions reciprocal negative easements were created

(*Allen* v. *City of Detroit, supra*) alike upon the land sold and upon lot 2.  The question, therefore, presented is whether the recording of the deeds creating these reciprocal negative easements gave constructive notice to subsequent purchasers of lot 2.

The courts have not had this question before them with any degree of frequency.  The New Jersey court has sustained defendants' contention.  *Glorieux* v. *Lighthipe*, 88 N. J. Law, 199 (96 Atl. 94, Ann. Cas. 1917E, 484), and the decision of the supreme court of Colorado in *Judd* v. *Robinson*, 41 Colo. 222 (92 Pac. 724, 14 Ann. Cas. 1018), has that effect.  Mr. Tiffany says in the latest edition of his work on Real Property (2 Tiffany on Real Property [2d Ed.], p. 2188) :

"A purchaser is, it appears, ordinarily charged with notice of an incumbrance upon the property created by an instrument which is of record, although the primary purpose of such instrument is, not the creation of such incumbrance, but the conveyance of neighboring /property.  For instance, if one owning two adjoining city lots conveys one of them, the instrument of conveyance expressly granting an easement as against the lot retained in favor of that conveyed, the record of such conveyance will, it seems, affect a subsequent purchaser of the former lot with notice of such easement and he will take subject thereto.  In such a case, at common law, the purchaser would take subject to the easement previously created, as being a legal interest, irrespective of whether he has notice thereof, and the rule in this respect could not well be regarded as changed by the adoption of the recording law, as applied to a case in which the grant of the easement does appear of record, though in connection with the conveyance of other land, to which the easement is made appurtenant.  *  *  *  And if, in conveying lot A, the grantor enters into a restrictive agreement as to the improvement of lot B, retained by him, a subsequent purchaser of lot B would ordinarily be charged with notice of the agreement, by reason of its record as a part of the conveyance of lot A.  Were he not so

charged, the restrictive agreement might be to a considerable extent nugatory."

The court of last resort of Maryland had the question before it in the case of *Lowes* v. *Carter,* 124 Md. 678 (93 Atl. 216), and there said:

"In holding that covenants creating such limitations may, if they manifest that intent, be enforced against the grantees of the original covenantors, the decisions we have cited on that subject have uniformly indicated that such a right could be asserted only against those acquiring title *with notice* of the restrictions. This was recognized as a reasonable and just qualification to be mentioned in connection with a statement of the general rule, but in none of the cases referred to was any intimation required or given as to the nature of the notice which would be necessary and sufficient to charge the assigns of the grantor with the observance of the covenant. In each instance the party sought to be bound by the restrictive conditions appeared to have actual knowledge of their terms. It was, therefore, not essential in the former cases to decide whether *constructive* notice was sufficient to support such a liability, and that question is now presented to this court for the first time. * * *

"The covenant in question undoubtedly vested in the grantee a substantial interest in the reserved real estate. The right conferred, as appurtenant to the granted lot, to enforce the prescribed method of improvement as to the remaining parcels, was a valuable and important consideration for the purchase. It was the evident design of the parties that the interest or easement thus contracted for should be securely vested in the vendee and given all the protection which the law affords. To that end the covenant was inserted in the deed for the lot, to which the right was appurtenant, and placed upon the public land records. The statute does not require that such an agreement shall be recorded in the form of a separate instrument. The method adopted was practical and appropriate and was authorized by the law as a means of safeguarding the rights created by the deed against adverse interests of later origin. In our opinion,

this purpose has been accomplished in the present case. As the appellee obtained his title through the foreclosure of a mortgage which was executed after the easement which he is now contesting had become a matter of public record, he is chargeable with implied notice of its existence and effect, and must be held to have acquired his property subject to the conditions thus imposed."

The supreme court of Missouri has likewise had the question under consideration in *King* v. *Union Trust Co.*, 226 Mo. 351 (126 S. W. 415). After considering some of the cases, it is said:

"From this decision [*Digman* v. *McCollum*, 47 Mo. 374], and the *Maguire Case* [10 Mo. 34], referred to therein, it is clear that a purchaser is affected with constructive notice of all duly-recorded conveyances by his grantor affecting the latter's title; and the deed to Mrs. Sweringen did affect the grantor's title in this, that the grantor could not convey any of the lots in 'Rex Subdivision' save subject to the restrictions and conditions set out in the deed to Mrs. Sweringen. In that deed the grantor covenanted 'that it will not at any time thereafter convey or otherwise dispose of any lot in Rex's subdivision except upon and subject to such restrictions and conditions as are hereinbefore mentioned, and as are common to all the lots in said subdivision.' The rule is that a recital in a deed of a fact will generally conclude the grantor and his privies."

The court then considers some further authorities and concludes on this subject:

"The foregoing decisions, and many more which we might cite, but with which we do not deem it necessary to burden this opinion, make it clear to our mind that the defendant was bound by the covenants and restrictions in the recorded deed of the Rex Realty Company to Mrs. Sweringen, and of which the defendant must be held to have constructive notice."

The question was also considered and decided in

*Holt* v. *Fleischman,* 75 App. Div. 593 (78 N. Y. Supp. 647). We quote from the syllabus:

"Plaintiff's grantor, owning several adjoining lots, conveyed a part of the property to plaintiff under a deed containing a covenant/providing that, on the improvement of her adjoining lots, the houses erected thereon should be on a line with the fronts of the present adjoining houses annexed thereto, which deed was duly recorded; and defendant acquired title to such adjoining property under a deed in partition between the heirs of such prior grantor. *Held,* that defendant was bound to take notice of the record of plaintiff's deed, and was therefore bound by the restrictive covenant therein contained, imposing an easement on the adjoining property."

Upon principle we think the rule adopted by Mr. Tiffany and the Maryland, Missouri and New York courts is the correct one. By the deeds executed by Mrs. Wilcox a negative easement was by her placed upon lot 2. When these deeds were placed on record this gave constructive notice of that negative easement. Defendant Shelbourne Company was not a *bona fide* purchaser and took subject to the rights of the plaintiffs.

Upon the argument it was pointed out that the Shelbourne Company had expended some money and entered into engagements for the carrying out of the plan of converting the Wilcox home into a restaurant. But there has been no laches on the part of plaintiffs. As soon as they learned of the sale they at once took up the matter with Mr. Wilcox and the officers of the company. Failing by negotiations to secure their rights, this bill was filed.

The decree will be affirmed, with costs.

STEERE, C. J., and MOORE, WIEST, STONE, CLARK, BIRD, and SHARPE, JJ., concurred.