GRANT v. CRAIGIE.

1. COVENANTS—RESTRICTION OF USE—PUBLIC POLICY—UNLAWFUL RESTRAINT OF TRADE.
   A grantor in conveying property may impose restrictions as to the use thereof, the only limitation on such right being that it be exercised reasonably, with due regard to public policy and without creating any unlawful restraint of trade.

2. SAME—RESTRICTIONS AS TO USE FOR SALE OF INTOXICATING LIQUORS.
   A covenant not to use premises for the purpose of vending spirituous liquors is not contrary to public policy and is valid and enforcible.

3. INJUNCTION—RESTRICTION ON USE OF PROPERTY.
   When an attempt is made to enjoin a property owner from making a lawful use of his premises, the court must be convinced that he or his predecessor in title has taken the premises by a deed which contains the restriction or condition expressed in clear and certain terms.

4. SAME—BURDEN OF PROOF—RECIPROCAL NEGATIVE EASEMENT.
   One seeking to establish a restriction on the use of land on an equitable theory, such as by a reciprocal negative easement, has the burden of proof to establish the restriction.

5. COVENANTS—COMMON OWNER—RECIPROCAL NEGATIVE EASEMENT.
   A reciprocal negative easement is created where the owner of two or more lots, so situated as to bear the relation, sells one with restrictions of benefit to the land retained, the servitude becoming mutual and, during the period of restraint, forbidding the owner of the lot retained from doing anything forbidden to the owner of the lot sold; such easements by their very nature never being retroactive.

6. SAME—RESTRICTIONS BY SUBDIVIDER ON LAND NOT PROPERLY WITHIN PLAT.
   Where subdivider, in order to sell lots as lake frontage lots, made an agreement with owner of land between lake and subdivider's

own land whereby owner of lakeside land agreed to convey frontage to purchasers of lots from subdivider, but did not join subdivider in executing plat covering both tracts, subdivider's insertion of clause in deeds prohibiting use of lots "as platted" for manufacture or sale of spirituous liquor did not raise a reciprocal negative easement as to lakeside end of lots conveyed directly by owner to lot purchaser by deed not containing such restriction, nor was the lakeside owner a "common grantor" (How. Stat. § 1473).

7. SAME—PLATS—EVIDENCE—RESTRICTIONS.
   A plat which purported to cover lakeside property owned by party other than subdivider but not signed by or on behalf of such lakeside owner *held*, inadmissible to establish restrictive covenants on the lakeside property.

8. SAME—RESTRICTIONS NOT IMPLIED.
   A restriction is in the nature of a covenant and cannot be implied in a conveyance (3 Comp. Laws 1929, § 13281).

Appeal from Oakland; Holland (H. Russel), J. Submitted January 10, 1940. (Docket No. 25, Calendar No. 40,897.) Decided March 15, 1940. Rehearing denied June 18, 1940.

Bill by George W. Grant and others against Charles C. Craigie and another to enjoin the alleged violation of covenants prohibiting use of land for manufacture and sale of intoxicating liquors. Bill dismissed. Plaintiffs appeal. Affirmed.

*Bethune D. Blain,* for plaintiffs.

*George A. Cram,* for defendants.

CHANDLER, J. This is a suit to restrain the defendants from violating an alleged liquor restriction. Plaintiffs are the owners of certain lots in the Windiate Park subdivision in Oakland county. Defendant Craigie owns lots 18, 19, 20, and 21 of this subdivision. Defendant Langs leased the lots from

Craigie in April of 1937 for a period of five years. The subdivider of the property was Alfred Windiate, who owned the part of the subdivision in the northwest quarter of the northwest quarter of section 5. Alexander Blain owned a small irregular strip of land bordering on Lotus lake in the northeast quarter of the northeast quarter of section 6, which extends from lot 3 to lot 26, inclusive, of Windiate's adjoining property, and which varies in width from a few feet to approximately 39 feet from the east shore of Lotus lake.

In order to sell his property as lake frontage, Windiate entered into an agreement with Blain in April of 1892. The agreement provided that Blain, for the future consideration of one dollar per lake front foot, at any time within 10 years and whenever and as often as Windiate should make a sale of any lot or lots on the lake front, would deed to Windiate or directly to the purchaser the portions of the lots which lay within section 6 belonging to Blain, and would grant to the holders and owners of the lots the free use of the water of Lotus lake. It was provided that the agreement would be void if not acted upon in five years. Thereafter, Windiate platted the property, including in the plat the land belonging to Blain, although Blain did not join in executing the plat nor did he authorize Windiate to make the plat in his behalf.

Blain, in accordance with the agreement, executed independent deeds of the "Blain ends" of the lots in question to the purchasers of the Windiate portion of the lots. The Blain deeds were dated and delivered more than a year after Windiate sold the lots. Windiate's deeds included the description of the "Blain ends" and imposed the express restriction that the purchaser, or his representatives or

assigns, "shall not make or sell thereon any wine, ale or liquor, brewed, fermented or spirituous."

On the other hand, it is admitted that no such restriction was imposed by Blain in any conveyance of his portions of the lots, and also that no mention of such a restriction was made in the original agreement between Blain and Windiate. Nowhere in the legal chain of title to the Blain strip are restrictions mentioned.

In the summer of 1937, defendant Langs procured a beer license from the liquor control commission and proceeded to sell beer in a pavilion located entirely on the Blain end of lot 18. The plaintiffs promptly protested and brought this suit to enjoin the sale of beer on the property as a breach of the restriction.

Plaintiffs claim that the Windiate-Blain agreement gave Windiate a sufficient interest in the Blain land validly to execute the plat and impose restrictions thereon, and that even though the Blain deeds contained no express restriction, the liquor restriction applying to the Windiate portion could be imposed on the "Blain ends" by virtue of the doctrine of reciprocal negative easements, or by some other equitable theory.

The trial court denied plaintiffs the relief sought on the ground that the Blain or lake ends of the lots were not restricted, and dismissed the bill.

Does the liquor restriction apply to the Blain portion of lot 18?

It is universally accepted that a grantor in conveying property may impose restrictions as to the use thereof. The only limitations on this right are that it shall be exercised reasonably, with due regard to public policy, and without creating any unlawful restraint of trade. A covenant not to use

premises for the purpose of vending spirituous liquors is not contrary to public policy and is valid and enforcible. *Watrous* v. *Allen*, 57 Mich. 362 (58 Am. Rep. 363).

It is equally true that when an attempt is made to enjoin a property owner from making a lawful use of his premises, the court must be convinced that he or his predecessor in title has taken the premises by a deed which contains the restriction or condition expressed in clear and certain terms. Likewise, if plaintiffs seek to establish the restriction on an equitable theory, such as by a reciprocal negative easement, the burden of proof to establish the restriction is upon them. *Fenwick* v. *Leonard*, 255 Mich. 85.

It is conceded by counsel that the deeds conveying the "Blain ends" of the lots in question contain no express liquor restriction. Therefore, in order to impose the restriction some equitable doctrine must be invoked. One such doctrine is that of reciprocal negative easements.

This doctrine as applied in this state was discussed in *Sanborn* v. *McLean*, 233 Mich. 227 (60 A. L. R. 1212), wherein it is said:

"If the owner of two or more lots, so situated as to bear the relation, sells one with restrictions of benefit to the land retained, the servitude becomes mutual and, during the period of restraint, the owner of the lot or lots retained can do nothing forbidden to the owner of the lot sold. For want of a better descriptive term this is styled a reciprocal negative easement.

"It must start with a common owner. Reciprocal negative easements are never retroactive; the very nature of their origin forbids. They arise, if at all, out of a benefit accorded land retained, by restrictions upon neighboring land sold by a common

owner. Such a scheme of restrictions must start with a common owner; it cannot arise and fasten upon one lot by reason of other lot owners conforming to a general plan."

This leads us to inquire whether Windiate was the "common owner" or "common grantor" of both parcels of the property involved. No claim is made that Windiate had legal title to the "Blain ends," but plaintiffs do contend that the agreement between Blain and Windiate in 1892 gave Windiate a sufficient right to apply restrictions to the Blain property. The agreement was not a conveyance to Windiate in any sense of the word, but merely an agreement to convey at any time within 10 years. The title remained in Blain and only he could convey it. This was the understanding of the parties as shown by the fact that whenever Windiate sold a lot, Blain subsequently, by a separate deed, conveyed his portion to the purchaser. Blain's interest did not merge with Windiate's interest as a result of the agreement. They remained separate. This leads us to hold that the trial court was correct in finding that the agreement did not give Windiate sufficient interest in the property to be considered a common grantor as required by the doctrine of reciprocal negative easements.

It is further contended that the restriction applies to the Blain end of the lot inasmuch as Windiate platted the subdivision, including the Blain property, and executed warranty deeds to the purchasers of the lots "as platted," and imposed the restriction on the whole lot. This contention is of no effect in view of the plat act in force at the time the plat was executed. How. Stat. § 1473, required that the names of all proprietors, *i. e.*, owners, must appear on the plat and that it be signed by all proprie-

tors in order to entitle it to record. The recorded copy does not contain the name of Blain, nor is there anything in the agreement or any other instrument or evidence from which the court can conclude that Windiate executed said plat for or in behalf of Blain. The plat was thus inadmissible to establish any restrictions on the Blain property.

There were no restrictions in the Blain deeds and none can be read into them by the court. A restriction is in the nature of a covenant and cannot be implied in a conveyance. *Thorkildsen* v. *Carpenter*, 120 Mich. 419; *Kime* v. *Dunnitz*, 249 Mich. 588, and 3 Comp. Laws 1929, § 13281 (Stat. Ann. § 26.524).

"Owners of property have rights therein which must be respected. It is only under unusual circumstances that its use will be restricted other than by the provisions in the conveyance on which the title rests." *Miller* v. *Ettinger,* 235 Mich. 527.

The decree is affirmed, with costs to appellees.

BUSHNELL, C. J., and SHARPE, POTTER, NORTH, McALLISTER, WIEST, and BUTZEL, JJ., concurred.