DENHARDT *v.* DE ROO.

1. COVENANTS—RESTRICTIONS—RECIPROCAL NEGATIVE EASEMENTS.
   If the owner of two or more lots, so situated as to bear the relation, sells one with restrictions of benefit to the land retained, the servitude becomes mutual, and, during the period of restraint, the owner of the lot or lots retained may do nothing forbidden to the owner of the lot sold; they being subject to a reciprocal negative easement.

2. SAME—RECIPROCAL NEGATIVE EASEMENT—ORIGIN—EXPIRATION.
   A reciprocal negative easement runs with the land sold by virtue of express fastening and abides with the land retained until loosened by expiration of its period of service or by events working its destruction.

3. SAME—RECIPROCAL NEGATIVE EASEMENT—OPERATION.
   A reciprocal negative easement is not personal to owners but is operative upon use of the land by any owner having actual or constructive notice thereof, and is an easement passing its benefits and carrying its obligations to all purchasers of land subject to its affirmative or negative mandates.

4. SAME—RECIPROCAL NEGATIVE EASEMENT—ORIGIN.

Reciprocal negative easements are never retroactive, but arise, if at all, out of a benefit accorded land retained by restrictions imposed upon neighboring land sold by a common owner, and may not arise and fasten upon one lot by reason of other lot owners conforming to a general plan.

5. SAME—BURDEN OF PROVING A RECIPROCAL NEGATIVE EASEMENT.

In suit to enforce a claimed reciprocal negative easement the burden of establishing restrictions by way of such easement is on the plaintiff.

6. EQUITY—RESTRICTIONS ON THE USE OF PROPERTY.

Courts of equity do not aid one man to restrict another in the use to which he may put his property unless the right to such aid is clear.

7. COVENANTS—RESTRICTIONS—COMMON OWNERSHIP.

Where there is no express restriction in the chain of title of the particular lot the use of which is sought to be restricted through reciprocal negative easements, there must be proof of a scheme of restrictions originating from a common owner.

8. SAME—RESTRICTION ON SINGLE LOT.

A restriction placed in the title to a single lot does not establish a plan which will give rise to a reciprocal negative easement.

9. SAME—RECIPROCAL NEGATIVE EASEMENT—GENERAL PLAN.

To establish a general plan sufficient to raise a reciprocal negative easement it is necessary that the plan must have been maintained from its inception and must have been understood, accepted, relied on, and acted upon by all in interest.

10. SAME—RECIPROCAL NEGATIVE EASEMENT—EVIDENCE—COMMON PLAN.

In suit to enforce claimed reciprocal negative easement, evidence *held*, insufficient to establish a plan founded by a common grantor giving rise to such an easement.

Appeal from Wayne; Chenot (James E.), J. Submitted June 12, 1940. (Docket No. 71, Calendar No. 41,138.) Decided October 7, 1940.

Bill by Hugo G. Denhardt and others against Eliza De Roo and Modest De Roo to enjoin the viola-

tion of claimed building restrictions. Decree for plaintiffs. Defendants appeal. Reversed.

*William B. Giles* and *Ralph Lane,* for plaintiffs.

*Melvin A. Oll (David C. Vokes,* of counsel), for defendants.

BUTZEL, J.   This is a bill in equity to enforce a claimed "reciprocal negative easement" under the principles of *Sanborn* v. *McLean,* 233 Mich. 227 (60 A. L. R. 1212).   Plaintiffs are the owners of lots in Ruehle Harper avenue subdivision; defendant Eliza De Roo is the owner of lots 50 and 51 of said subdivision, and her husband, defendant Modest De Roo, is joined as a participant in the alleged violation of the restrictions on the use to which the lots in the subdivision may be put.   Most of the facts are before us by stipulation of counsel; defendants offered some additional proofs.   A plat of the subdivision of 74 lots without restrictions of any kind was filed in 1921.   George E. and Cooper H. Ruehle were tenants in common with their mother, Sarah J. Ruehle.   In 1922, the owners partitioned all the lots in the subdivision so that Cooper and Sarah each individually became the owner in fee of 25 lots, and George of the remaining 24.   The lots thus partitioned were not grouped or arrayed in any definite arrangement, but the holdings of each owner were spread indiscriminately throughout the small subdivision.   Cooper acquired lots 50 and 51, which were conveyed by mesne conveyances without restrictions to defendant Eliza De Roo.   None of the subsequent conveyances by George and Sarah contained any restrictions or reference to restrictions of record.   In 1926, Cooper conveyed lot 55 by deed containing the following language:

"Subject to the following incumbrances and restrictions:

"1. This lot is restricted to residence purposes. Any dwelling erected hereon shall cost at least $3,000, and shall stand at least 20 feet back of the front lot line."

In 1929, he conveyed lot 28 by deed containing substantially the same language, except that the minimum cost was to be $2,000. However, many other deeds were executed by him without any reference at all to restrictions; some, however, were expressly stated to be subject to "building restrictions of record," "restrictions of record," or "restrictions which run with the land." Obviously, there were no building restrictions of record. About 21 lots of the subdivision are vacant. On lot 1 stands a building originally constructed as a dwelling house, but it has been converted into the offices of an attorney and a firm of builders and real estate operators. On lots 7 and 8 a dwelling house on the front part of the lots has been converted into offices for real estate and building operators; on the rear portion of these lots is a garage operated as a general automobile repair business. On lots 13 and 14 a house has been converted into a combination coal, ice, wood and landscaping business. On the rear portion of lot 20 stands a large frame garage which is used in the operation of an electrical business. The balance of the improved lots is used for private residence purposes. Defendant Eliza De Roo contemplates building a one-story building in which is to be operated a grocery and meat business; defendant Modest De Roo is the builder of the proposed structure. It is conceded that there are no express restrictions in the plat or in the deeds which form the chain of title to defendant Eliza De Roo. The trial court granted the relief prayed on the ground that

the express restrictions in the deeds to lots 28 and 55, and the references to restrictions "of record" or which "run with the land" in other deeds subjected lots 50 and 51 to a reciprocal negative easement. In reaching this result the trial court expressly disbelieved the uncontradicted testimony of Cooper and George Ruehle that there was no general plan or scheme of restrictions when the lots were conveyed, and that any restrictions in the deeds to lots 28 and 55 or references to restrictions in the other deeds were inadvertently inserted by the typist in Cooper's office who copied the wording of deeds in another subdivision.

We shall assume, as the trial court found, that lots 28 and 55 were deliberately restricted, and that the reference to restrictions in some of the other deeds may not now be explained as being the result of mistake (see *Harvey* v. *Rubin,* 219 Mich. 307), or of the scrivener's overabundant caution. These facts we assume but do not determine.

The principles applicable to the rule of "reciprocal negative easement" were classically stated by Mr. Justice WIEST in *Sanborn* v. *McLean, supra:*

"If the owner of two or more lots, so situated as to bear the relation, sells one with restrictions of benefit to the land retained, the servitude becomes mutual, and, during the period of restraint, the owner of the lot or lots retained can do nothing forbidden to the owner of the lot sold. For want of a better descriptive term this is styled a reciprocal negative easement. It runs with the land sold by virtue of express fastening and abides with the land retained until loosened by expiration of its period of service or by events working its destruction. It is not personal to owners but operative upon use of the land by any owner having actual or constructive notice thereof. It is an easement passing its benefits

and carrying its obligations to all purchasers of land subject to its affirmative or negative mandates. It originates for mutual benefit and exists with vigor sufficient to work its ends. It must start with a common owner. Reciprocal negative easements are never retroactive; the very nature of their origin forbids. They arise, if at all, out of a benefit accorded land retained, by restrictions upon neighboring land sold by a common owner. Such a scheme of restrictions must start with a common owner; it cannot arise and fasten upon one lot by reason of other lot owners conforming to a general plan."

The burden of establishing the restrictions by way of reciprocal negative easement is on plaintiffs. *Fenwick* v. *Leonard,* 255 Mich. 85; *Grant* v. *Craigie,* 292 Mich. 658.

"Courts of equity do not aid one man to restrict another in the use to which he may put his property unless the right to such aid is clear." *Casterton* v. *Plotkin,* 188 Mich. 333.

It has been said that only under unusual circumstances will the use of property be restricted other than by provisions in the conveyance on which the title rests. *Miller* v. *Ettinger,* 235 Mich. 527; *Kime* v. *Dunitz,* 249 Mich. 588. Where there is no express restriction in the chain of title of the particular lot the use of which is sought to be restricted, there must be proof of a "scheme of restrictions" originating from a common owner. *Williams* v. *Lawson,* 188 Mich. 88; *McQuade* v. *Wilcox,* 215 Mich. 302 (16 A. L. R. 997); *Kiskadden* v. *Berman,* 244 Mich. 473; *Nerrerter* v. *Little,* 258 Mich. 462; *Taylor* v. *State Highway Commissioner,* 283 Mich. 215; *Grant* v. *Craigie, supra.* A restriction placed in the title to a single lot does not establish such a plan. *Taylor* v. *State Highway Commissioner, supra.* The general plan must have been "maintained from its incep-

tion," and "understood, accepted, relied on, and acted upon by all in interest" (*Allen* v. *City of Detroit*, 167 Mich. 464, 469 [36 L. R. A. (N. S.) 890]). *Library Neighborhood Association* v. *Goosen*, 229 Mich. 89; *French* v. *White Star Refining Co.*, 229 Mich. 474; *Signaigo* v. *Begun*, 234 Mich. 246; *Kime* v. *Dunitz, supra.* The scheme must have its origin in a common grantor; "it cannot arise and fasten upon one lot by reason of other lot owners conforming to a general plan" (*Sanborn* v. *McLean, supra*). See, also, *Casterton* v. *Plotkin, supra,* and *Miller* v. *Ettinger, supra.* Plaintiffs have failed to produce evidence tending to establish a plan founded by the common grantor. Nor is their case aided by the observation of Mr. Justice BIRD in *French* v. *White Star Refining Co., supra,* that:

"One of the best evidences that it was intended to be a restricted district is the fact that the restrictions have been observed and nothing but dwellings erected."

The stipulation is indicative of the contrary. While none of the lots partitioned to Cooper H. Ruehle has been used for business purposes, the scattered array of his holdings leads to the conclusion that any neighborhood plan or scheme would have been impossible without the binding cooperation by way of express restrictions from the other owners in the subdivision. Lots 50 and 51 front on Berkshire road. The two lots immediately to the east and the two lots to the south, which were among those deeded to George at the time of the partition, were never restricted, nor were any others deeded to him or thereafter sold by him. Defendants could not enforce restrictions as to the lots immediately to the east or south of lots 50 and 51. An attorney, after finding no restrictions in the

chain of title, but who might possibly suspect there were reciprocal negative easements, were he to examine the title to these adjoining lots or to almost all of the 74 lots in the entire subdivision, would come to the conclusion that there were none, and that there was no common owner. If he still had any doubts the business purposes for which certain lots were being used would confirm his opinion. There were no restrictions nor negative easements from a common owner of the adjoining lots.

A decree may be entered dismissing the bill. Costs to defendants.

BUSHNELL, C. J., and SHARPE, CHANDLER, NORTH, MCALLISTER, and WIEST, JJ., concurred. The late Justice POTTER took no part in this decision.