EVELETH v. BEST.

1. EVIDENCE—INFERENCE—POSSESSION.
    Where record title appears to be in one party but others have erected a garage building and their right to do so is not challenged, an inference is drawn that latter have some interest in or right to possession of the premises.

2. COVENANTS—RECIPROCAL NEGATIVE EASEMENTS—STATE.
    . .Where some, but not all, lot owners in a subdivision agreed *inter se* to impose certain restrictions upon the use to which all the lots in the subdivision could be put and recorded the agreement, defendants' lot was then owned by the State, and it was not a party to the agreement, the restrictions do not apply to such lot.

REFERENCES FOR POINTS IN HEADNOTES
[1] 20 Am. Jur., Evidence, § 235.
[4] Relief in injunction suit in respect of easement as affected by doubt as to right to easement. 139 A.L.R. 165.
[5] See 17 Am. Jur., Easements, § 28.

3. SAME—NATURE OF RECIPROCAL NEGATIVE EASEMENTS.

Reciprocal negative easements are never retroactive but must start with a common owner and cannot arise and fasten upon one lot by reason of other lot owners conforming to a general plan.

4. SAME—RESTRICTIONS—EQUITY.

Courts of equity do not aid one man to restrict another in the use to which he may put his property unless the right to such aid is clear.

5. SAME—RESTRICTIONS—COMMON OWNERSHIP.

Where there is no express restriction in the chain of title of the particular lot the use of which is sought to be restricted, there must be proof of a "scheme of restriction" originating from a common owner.

Appeal from Oakland; Hartrick (George B.), J. Submitted June 15, 1948. (Docket No. 14, Calendar No. 43,915.) Decided November 12, 1948.

Bill by Harry P. Eveleth and others against Samuel W. Best and others to enforce claimed restrictions against use of real estate. Decree for plaintiffs. Defendants Kubat appeal. Reversed.

*H. Eugene Field,* for plaintiff.

*C. Walter Healy,* for defendants Kubat.

BOYLES, J. This is a bill in chancery to restrain the defendants from alleged violation of claimed restrictions on the use of lot 63 in Gardendale Assessor's Plat No. 1 in Ferndale, Oakland county, Michigan. A decree was entered in the circuit court permanently enjoining the defendants from engaging "in the general business of the repair of damaged automobile bodies and fenders by a process that causes incident noise and disturbance and the general business of painting." The defendants Anthony and Steve Kubat appeal.

The individual plaintiffs are the owners of 8 lots in said Gardendale Assessor's Plat No. 1. They are also members of the plaintiff Gardendale Co-operative Association, which association, however, is not shown to be the owner of any property in said subdivision, nor is it shown that any of the other plaintiffs has ever been the owner of all of the lots therein. On November 1, 1940, the owners of a part of the lots in said subdivision entered into a restriction agreement, attempting to establish certain use restrictions for the entire subdivision. This agreement was recorded November 6, 1940, in the office of the register of deeds for Oakland county. The record before us does not show who was the original plattor or common owner of all of the lots in said subdivision. However, the record does establish that at the time said restriction agreement was entered into and recorded the title to lot 63 of said subdivision was in the State of Michigan and that the State of Michigan did not enter into said restriction agreement. The issue in the present case involves the use of said lot 63.

On April 25, 1944, the defendants Samuel W. and Emma M. Best acquired the title of said lot 63 by conveyance from the State of Michigan through the State land office board, which conveyance was duly recorded. The legality of this conveyance is not here in question, nor are the rights of Samuel W. and Emma M. Best an issue on this appeal. The defendants Anthony and Steve Kubat by their answer admitted that the conveyance from the State of Michigan to Samuel W. and Emma M. Best "subjected the property to any restrictions on the use of the premises." The Bests did not appear or file an answer in the case.

According to the claim of the defendants Anthony and Steve Kubat, the said Anthony Kubat "bought" lot 63 in 1946 and entered into a contract for the

erection of a garage building thereon. At the hearing in the circuit court Anthony Kubat testified that he was the owner of said lot 63. The record does not show the conveyance or land contract (if any) from the Bests to Anthony Kubat. Plaintiffs' bill of complaint alleges that Samuel W. Best and Emma M. Best, his wife, are the record title owners of said lot 63, and this allegation is admitted in the answer filed by the defendants Anthony and Steve Kubat. We must conclude from the record that Samuel W. and Emma M. Best hold the record title to said lot 63, although it is apparent that the defendants Anthony and Steve Kubat have some interest in or right to the possession of said lot 63, inasmuch as they have erected a garage building thereon and their right to do so is not challenged by the plaintiffs.

The record does establish that in the spring of 1946 the defendants Anthony and Steve Kubat, under some claim of right of possession or ownership in said lot 63, erected a garage building thereon. It is their use of said building which plaintiffs claim to be in violation of the restrictions hereinbefore referred to. Among such restrictions, the following are involved in the case:

"(b) Lots 1 to 81, inclusive, are restricted to commercial use for retail merchandising, * * *

"(e) No noxious or offensive trade shall be carried on upon any lot, nor shall anything be done thereon which may be or become an annoyance or nuisance to the neighborhood."

The defendants Anthony and Steve Kubat claim that the restrictions do not apply to said lot 63 and for that reason are not binding upon them. If their contention in that regard is correct, it is not necessary to consider the question whether their use of the building they have erected on lot 63 is "retail merchandising," or whether the use of the building by

said defendants results in a noxious or offensive trade which has become an annoyance or a nuisance to the neighborhood. The initial question in the case is whether the restrictions against use agreed to by some but not all of the owners of lots 1 to 81 in said subdivision, not shown to have been imposed by the original plattor or a common owner or owners on all of said property, or as a general plan adopted by a common owner or owners, are valid restrictions on the use of said lot 63.

The record fails to show that any owner in the chain of title of said lot 63 has ever agreed to or been a party to the aforesaid use restrictions. While the conveyance of said lot 63 by the State of Michigan to defendants Samuel W. and Emma M. Best is expressly made subject to any restrictions upon the use of said lot 63,* this conveyance does not *impose* any restriction against use but merely continues in effect restrictions against use, if any such existed at the time of such conveyance. Nor is there any showing in the record that the Bests have imposed any restrictions against use of said lot 63. Hence, the precise question is whether there was any such restriction against the use of said lot 63 at the time the Kubats acquired whatever interest they have in said lot. More particularly, the question is whether the agreement entered into by some lot owners applies to the use of lot 63.·

The agreement entered into by the owners of a part of the property in said subdivision against the use of lots 1 to 81, inclusive, therein, not having been imposed by a common owner of all of said lots and not having been entered into by any of the defendants herein or by any of their grantors in the chain

---

* See Act No. 155, § 9, Pub. Acts 1937, as amended by Act No. 363, Pub. Acts 1941 (Comp. Laws Supp. 1945, § 3723-9, Stat. Ann. 1947 Cum. Supp. § 7.959).

of title to said lot 63, does not apply to the use of said lot 63.

In referring to a restriction imposed upon the use of lots in a subdivision, commonly referred to as a reciprocal negative easement, this Court has said:

"It must start with a common owner. Reciprocal negative easements are never retroactive; the very nature of their origin forbids. They arise, if at all, out of a benefit accorded land retained, by restrictions upon neighboring land sold by a common owner. Such a scheme of restrictions must start with a common owner; it cannot arise and fasten upon one lot by reason of other lot owners conforming to a general plan. If a reciprocal negative easement attached to defendants' lot it was fastened thereto while in the hands of the common owner of it and neighboring lots by way of sale of other lots with restrictions beneficial at that time to it." *Sanborn* v. *McLean,* 233 Mich. 227 (60 A. L. R. 1212).

"Courts of equity do not aid one man to restrict another in the use to which he may put his property unless the right to such aid is clear." *Casterton* v. *Plotkin,* 188 Mich. 333, 344.

"Where there is no express restriction in the chain of title of the particular lot the use of which is sought to be restricted, there must be proof of a 'scheme of restrictions' originating from a common owner. *Williams* v. *Lawson,* 188 Mich. 88; *McQuade* v. *Wilcox,* 215 Mich. 302 (16 A. L. R. 997); *Kiskadden* v. *Berman,* 244 Mich. 473; *Nerrerter* v. *Little,* 258 Mich. 462; *Taylor* v. *State Highway Commissioner,* 283 Mich. 215; *Grant* v. *Craigie,* 292 Mich. 658. A restriction placed in the title to a single lot does not establish such a plan. *Taylor* v. *State Highway Commissioner, supra.* The general plan must have been 'maintained from its inception,' and 'understood, accepted, relied on, and acted upon by all in interest' (*Allen* v. *City of Detroit,* 167 Mich. 464, 469 [36 L. R. A. (N. S.) 890]); *Library Neighbor-*

*hood Association* v. *Goosen*, 229 Mich. 89; *French* v. *White Star Refining Co.*, 229 Mich. 474; *Signaigo* v. *Begun*, 234 Mich. 246; *Kime* v. *Dunitz*, 249 Mich. 588.  The scheme must have its origin in a common grantor; 'it cannot arise and fasten upon one lot by reason of other lot owners conforming to a general plan' (*Sanborn* v. *McLean*, 233 Mich. 227 (60 A. L. R. 1212).  See, also, *Casterton* v. *Plotkin*, 188 Mich. 333, and *Miller* v. *Ettinger*, 235 Mich. 527. Plaintiffs have failed to produce evidence tending to establish a plan founded by the common grantor." *Denhardt* v. *DeRoo*, 295 Mich. 223.

"There is but one question here and that is, whether a reciprocal negative easement can be fastened upon use by defendant of his property by reason of endeavor of other property owners to conform to restrictions self-imposed.

"Plaintiffs cannot, by their own desire and action in accord therewith, in the absence of joinder therein by defendant, constitute their tenements dominant in respect to use by defendant of his property." *Hart* v. *Kuhlman*, 298 Mich. 265.

We conclude that the restrictions do not apply to said lot 63.  The decree is set aside for entry of an order dismissing the bill of complaint, with costs to appellants.

BUSHNELL, C. J., and SHARPE, REID, NORTH, DETHMERS, BUTZEL, and CARR, JJ., concurred.