# STATE OF MICHIGAN

# COURT OF APPEALS

---

PETERSEN FINANCIAL LLC,

      Plaintiff-Appellant,

v

TWIN CREEKS LLC,

      Defendant,

and

TWIN CREEK ESTATES ASSOCIATION,
JAMES SCHAEFER, JILL SCHAEFER, GARY
BURGHGRAEF, and MELANIE
BURGHGRAEF,

      Defendants-Appellees.

FOR PUBLICATION
November 22, 2016
9:00 a.m.

No. 329019
Kent Circuit Court
LC No. 14-006711-CH

---

PETERSEN FINANCIAL LLC,

      Plaintiff-Appellee,

v

TWIN CREEKS LLC, TWIN CREEK ESTATES
ASSOCIATION, GARY BURGHGRAEF, and
MELANIE BURGHGRAEF,

      Defendants,

and

JAMES SCHAEFER and JILL SCHAEFER,

      Defendants-Appellants.

No. 329622
Kent Circuit Court
LC No. 14-006711-CH

---

Before: SAWYER, P.J., and MARKEY and O'BRIEN, JJ.

PER CURIAM.

-1-

In Docket No. 329019, plaintiff appeals from the trial court's grant of summary disposition in favor of defendants on plaintiff's claim for slander of title and tortious interference with a business expectancy. In Docket No. 329622, defendants James and Jill Schaefer appeal from the trial court's grant of summary disposition in favor of plaintiff on plaintiff's claim to quiet title, specifically that certain deed restrictions do not apply to their property. We affirm.

This dispute involves a parcel located in the Twin Creeks development in Cannon Township in Kent County. The time line begins in 2000, when defendant Twin Creeks Development, LLC, owned all of the lots in the development. Thereafter, the following relevant events occurred:

- In 2002, most of the lot at issue here was conveyed by Twin Creeks Development to Carla Wolterstoff, with the remainder of the lot conveyed in 2004.

- In 2006, Twin Creeks, LLC,[1] recorded a document entitled "Deed Restrictions" covering all of the lots in the development; the date on the documents suggests that it had been executed four years earlier, in 2002.

- Carla Wolterstoff lost the lot due to a tax lien, with the Kent County Treasurer obtaining title early in February 2011.

- Plaintiff purchased the lot at a foreclosure sale in September 2011.

The individual defendants, the Schaefers and the Burghgraefs, own parcels within the development.[2] According to plaintiff, it was unaware of the deed restrictions when it purchased the property, but when it listed the property for sale, Gary Burghgraef sent an email to plaintiff's real estate agent notifying the agent that the property was subject to deed restrictions. (Plaintiff's Exhibit 13.) Additionally, according to an affidavit by plaintiff's real estate agent, she had been "contacted several times by the Defendants in this matter who informed me that there were deed restrictions on Plaintiff's property and that they intended to enforce those restrictions." According to the real estate agent, they passed this information along to prospective buyers, who thereafter lost interest as a result.

Based upon this, plaintiff filed the instant action. Ultimately, the trial court granted summary disposition in favor of defendants on the claim for slander of title. The trial court opined as follows:

> In order to prevail on a common-law slander of title claim, a plaintiff must prove "that the defendant maliciously published false statements that disparaged a

---

[1] Although Twin Creeks, LLC, was originally a defendant in this case, it was dismissed by stipulation. The stipulation acknowledged that "Twin Creeks, L.L.C. does not now have, nor has it ever had an interest in the property" and that all claims were dismissed with prejudice.

[2] According to James Schaefer in his deposition, at the time that the Schaefers moved into the development, the only other house in the development was owned by the Burghgraefs.

-2-

plaintiff's right in property, causing special damages." *Fed Nat Mortg Ass'n v Lagoons Forest Condo Ass'n*, 305 Mich App 258, 270; 852 NW2d 217 (2014).

The dispositive issue here is the publication requirement. Plaintiff has produced no evidence that Defendants made comments or other communications regarding the deed restrictions to anyone other than Plaintiff and Plaintiff's real estate agents. "Publication to an agent of the plaintiff who is acting at plaintiff's behest and on his behalf is tantamount to a publication to the plaintiff himself, and as such does not fulfill the publication requirement." *Delval v PPG Indus, Inc*, 590 NE2d 1078, 1081 (Ind App, 1992).

Since Plaintiff cannot satisfy the publication requirement, its slander of title claim fails and must be dismissed as to all Defendants.

Plaintiff argues that the trial court's reliance on *Delval* is misplaced because it contradicts Michigan law. In this respect, plaintiff relies on this Court's decision in *Ball v White*, 3 Mich App 579, 584; 143 NWS2d 188 (1966), where we stated:

Defendant further contended that there was no publication of the letter to a third party. However, the transmission of the letter to the employer, Mr. Ball, was a publication. All that is necessary for a publication to exist is the delivery of the defamatory matter to any person other than the one libeled. Our Supreme Court has held that:

"If a person compose a libel and send it to his agent, to be read by him, and it reaches its destination and is read by such agent, it is sufficient publication to support the action." *Bacon v Michigan C. R. Co.* (1884), 55 Mich 224, 228 (54 Am Rep 372).

But neither *Ball*, nor the case it relies upon, *Bacon*, is on point. *Ball* involved a situation where the defendant published the defamatory statement not to the plaintiffs' agent, but to the plaintiffs' employer. *Ball*, 3 Mich App at 582. As for *Bacon*, as *Ball*'s quotation from *Bacon* reflects, the defamatory statement was published not to the plaintiff's agent, but to the defendant's own agents. Thus, neither deals with the situation here, a publication to plaintiff's agent.

We find the reasoning in *Deval*, as adopted by the trial court, to be persuasive. Under these circumstances, publication to plaintiff's agent is the equivalent of publication to plaintiff itself and cannot satisfy the publication requirement. Furthermore, we are not persuaded by plaintiff's argument that a different result should be reached because of the real estate agent's obligation to disclose the information to a third party, such as a potential buyer. Indeed, part of plaintiff's argument only makes the case why we should follow *Deval*. Plaintiff points to MCL 565.957 and a seller's obligation to disclose a number of things about the property, including whether there is "a homeowners' association that has any authority over the property." In other

words, not only would the real estate agent have a duty to disclose, so would the seller.[3] This reinforces the applicability of the principle in *Deval* because, with the information in the seller's possession, it would have to have been disclosed through the agent to any potential buyer in any event. That is, making the claims regarding the deed restrictions to plaintiff's real estate agent causes no further harm than making the claim to plaintiff itself.

Defendants raise a number of other arguments as to why it was entitled to summary disposition. But the trial court did not address these arguments. In any event, in light of our resolution of this issue on the grounds of the lack of publication to a third party, we need not address these additional arguments.[4]

We now turn to defendants' appeal, which argues that the trial court erred in granting summary disposition in favor of plaintiff on the quiet title claim. The trial court concluded that the deed restrictions do not apply for the following reasons:

> There are a number of reasons why the Deed Restrictions do not encumber the lot as a restrictive covenant. First, the majority of the lot was conveyed to Carla Wolterstoff prior to the Deed Restrictions being recorded—or even executed. Second, the remainder of the lot was conveyed to Carla Wolterstoff before the Deed Restrictions were recorded. Third, the Deed Restrictions were executed and recorded by Twin Creeks, LLC, which *never* held an interest in Plaintiff's lot, let alone at the time it executed or recorded the Deed Restrictions. Based on all of this, the Deed Restrictions were clearly outside the lot's chain of title, and a document recorded outside the chain of title cannot affect the interest of a person within the chain of title. *Bristol v Braidwood*, 28 Mich 191, 193 (1873).

The trial court also rejected defendants' argument that, even if not effective as deed restrictions, those restrictions qualify as a reciprocal negative easement:

> Defendants maintain that even if the Deed Restrictions do not qualify as a restrictive covenant, Plaintiff's lot is still encumbered by a reciprocal negative easement. In order to create a reciprocal negative easement, there must be (1) a common owner, (2) a general plan, (3) and the common owner must have

---

[3] Indeed, plaintiff acknowledges in its brief the disclosure act imposes liability on both the seller and the real estate agent.

[4] We also note that plaintiff argues that the trial court erroneously granted summary disposition in favor of defendants on plaintiff's claim for tortious interference with a business expectancy. But plaintiff makes no independent argument on this claim, essentially acknowledging the trial court's reasoning that, like the slander of title claim, there needed to be contact with a third party. Thus, the tortious interference claim rises or falls along with the slander claim. That is, a communication to real estate agents either satisfies the publication requirement of the slander claim and the third-party contact requirement of the tortious interference claim, or it fails as to both.

conveyed other lots with express restrictions in those deeds before conveying the lot at issue. *Sanborn v McLean*, 233 Mich 227, 230; 206 NW 496 (1925). "Thus, the implied restriction arises from the express restriction." *Civic Ass'n of Hammon Lake Estates v Hammon Lake Estates No 3 Lots 126-135*, 271 Mich App 130, 137; 721 NW2d 801 (2006). "Reciprocal negative easements are never retroactive." *Sanborn*, 233 Mich at 230. Also, the party seeking to establish the existence of a reciprocal negative easement bears the burden of proof. *Grant v Craigie*, 292 Mich 658, 662; 291 NW 44 (1940).

While Defendants can clearly establish that there was a common owner, and perhaps even show that the common owner had a general plan, they have provided no evidence that any lots were conveyed with express deed restrictions prior to Carla Wolterstoff taking title to Plaintiff's lot in 2001. Defendants have also failed to provide any evidence that lots were conveyed with express deed restrictions prior to Carla Wolterstoff obtaining title to the remaining 200 feet of Plaintiff's lot in 2004. Consequently, Defendants have failed to establish a genuine issue of material fact that a reciprocal negative easement exists, and Plaintiff is entitled to judgment as a matter of law on Count I.

Turning first to the issue of the deed restrictions themselves, we note that defendants make no argument that deed restrictions filed outside the chain of title are enforceable. Rather, defendants raise a number of equitable claims, none of which are persuasive.

First, defendants argue that the Wolterstoffs acquiesced to the deed restrictions. Defendants only cite a case from this Court, *B.P.A. II v Harrison Twp*, 73 Mich App 731; 252 NW2d 546 (1977), which addresses the doctrine of estoppel by acquiescence in general and did not involve deed restrictions. In a variation on this argument, defendants argue that the Wolterstoffs waived or voluntarily relinquished their rights to object to the deed restrictions. Again, the case relied upon by defendants, *Dahrooge v Rochester German Ins Co*, 177 Mich 442; 143 NW 608 (1913), discusses the concept of waiver in general and did not involve deed restrictions, but a fire insurance claim. Defendants then argue that both plaintiff and the Wolterstoffs are guilty of laches in failing to timely challenge the deed restrictions. Once again, neither case cited by defendants involves deed restrictions. *Lothian v Detroit*, 414 Mich 160; 324 NW2d 9 (1982), involved a claim against the city's retirement system and *Regents of the Univ of Mich v State Farm Mut Ins Co*, 250 Mich App 719; 650 NW2d 129 (2002), involved a no-fault insurance claim.

These arguments might have merit were this litigation between defendants and the Wolterstoffs in attempt to enforce the deed restrictions against the Wolterstoffs. But this is not the case. Whether the Wolterstoffs acquiesced to the deed restrictions, waived their right to challenge or even were guilty of laches does not form a basis to enforce the restrictions against plaintiff, who would have no basis to know of such action (or inaction) by the Wolterstoffs. The only one of these arguments that could even potentially apply to plaintiff would be an argument of plaintiff's own laches. But plaintiff purchased the property on September 9, 2011. This action was filed three years later. This hardly constitutes laches.

Finally, defendants argue that the deed restrictions are enforceable because they were agreed to by all owners. While the case relied upon by defendants, *Eveleth v Best*, 322 Mich 637; 34 NW2d 504 (1948), does support the contention that a group of property owners can agree to deed restrictions, it does not support defendants' position here. *Eveleth, id.* at 641, also shows that it has to be done in the chain of title:

> The initial question in the case is whether the restrictions against use agreed to by some but not all of the owners of lots 1 to 81 in said subdivision, not shown to have been imposed by the original plattor or a common owner or owners on all of said property, or as a general plan adopted by a common owner or owners, are valid restrictions on the use of said lot 63.

> The record fails to show that any owner in the chain of title of said lot 63 has ever agreed to or been a party to the aforesaid use restrictions. While the conveyance of said lot 63 by the State of Michigan to defendants Samuel W. and Emma M. Best is expressly made subject to any restrictions upon the use of said lot 63, this conveyance does not *impose* any restriction against use but merely continues in effect restrictions against use, if any such existed at the time of such conveyance. Nor is there any showing in the record that the Bests have imposed any restrictions against use of said lot 63. Hence, the precise question is whether there was any such restriction against the use of said lot 63 at the time the Kubats acquired whatever interest they have in said lot. More particularly, the question is whether the agreement entered into by some lot owners applies to the use of lot 63.

Defendants, however, point to no document signed by the Wolterstoffs and filed in the chain of title that shows their acceptance of the deed restrictions. And, in any event, this argument does not overcome the fact that the deed restrictions themselves, when they were filed, were not filed in the chain of title. Rather, they were filed by Twin Creeks, LLC, which the parties stipulated never had an ownership interest in the property. Simply put, had the Wolterstoffs signed a document accepting the deed restrictions AND that document had been filed in the chain of title, then plaintiff would be bound by them.

The *Eveleth* decision also addressed the issue of reciprocal negative easements:

> In referring to a restriction imposed upon the use of lots in a subdivision, commonly referred to as a reciprocal negative easement, this Court has said:

> "It must start with a common owner. Reciprocal negative easements are never retroactive; the very nature of their origin forbids. They arise, if at all, out of a benefit accorded land retained, by restrictions upon neighboring land sold by a common owner. Such a scheme of restrictions must start with a common owner; it cannot arise and fasten upon one lot by reason of other lot owners conforming to a general plan. If a reciprocal negative easement attached to defendants' lot it was fastened thereto while in the hands of the common owner of it and neighboring lots by way of sale of other lots with restrictions beneficial at that time to it." *Sanborn v McLean,* 233 Mich 227 (60 A.L.R. 1212).

-6-

"Courts of equity do not aid one man to restrict another in the use to which he may put his property unless the right to such aid is clear." *Casterton v Plotkin,* 188 Mich 333, 344.

"Where there is no express restriction in the chain of title of the particular lot the use of which is sought to be restricted, there must be proof of a 'scheme of restrictions' originating from a common owner. *Williams v Lawson,* 188 Mich 88; *McQuade v Wilcox,* 215 Mich 302 (16 A.L.R. 997); *Kiskadden v Berman,* 244 Mich 473; *Nerrerter v Little,* 258 Mich 462; *Taylor v State Highway Commissioner,* 283 Mich 215; *Grant v Craigie,* 292 Mich 658. A restriction placed in the title to a single lot does not establish such a plan. *Taylor v State Highway Commissioner, supra.* The general plan must have been 'maintained from its inception,' and 'understood, accepted, relied on, and acted upon by all in interest' (*Allen v City of Detroit,* 167 Mich 464, 469 [36 L.R.A. (N.S.) 890]); *Library Neighborhood Association v Goosen,* 229 Mich 89; *French v White Star Refining Co.,* 229 Mich 474; *Signaigo v Begun,* 234 Mich 246; *Kime v Dunitz,* 249 Mich 588. The scheme must have its origin in a common grantor; 'it cannot arise and fasten upon one lot by reason of other lot owners conforming to a general plan' (*Sanborn v McLean,* 233 Mich 227 (60 A.L.R. 1212). See, also, *Casterton v Plotkin,* 188 Mich 333, and *Miller v Ettinger,* 235 Mich 527. Plaintiffs have failed to produce evidence tending to establish a plan founded by the common grantor." *Denhardt v DeRoo,* 295 Mich 223.

"There is but one question here and that is, whether a reciprocal negative easement can be fastened upon use by defendant of his property by reason of endeavor of other property owners to conform to restrictions self-imposed.

"Plaintiffs cannot, by their own desire and action in accord therewith, in the absence of joinder therein by defendant, constitute their tenements dominant in respect to use by defendant of his property." *Hart v Kuhlman,* 298 Mich 265.

As the trial court concluded, defendants are unable to establish the common owner requirement because plaintiff's lot was sold before other lots were sold subject to the deed restrictions. Defendants attempt to avoid this problem by arguing that the Wolterstoffs' reliance and acceptance of the subsequent deed restrictions make them part of a group of "common owners." But, for the same reason that the similar argument fails with respect to the deed restrictions, it fails with respect to the reciprocal negative easement argument.

Affirmed. No costs, no party having prevailed in full.

/s/ David H. Sawyer
/s/ Jane E. Markey
/s/ Colleen A. O'Brien