FENWICK v. LEONARD.

1. INJUNCTION—COVENANTS—BUILDING RESTRICTIONS.
    In suit to enjoin use of corner lot for oil station, conclusion of court below that said lot was planned, represented, and held out to be unrestricted, and was always intended to be used for business purposes, *held*, justified by record.

2. SAME—RECIPROCAL NEGATIVE EASEMENT—BURDEN OF PROOF.

In suit to enjoin use of corner lot for oil station, where plat and deed contained no restrictions, burden of proving that reciprocal negative easement existed, so that lot may be used for residence purposes only, was upon plaintiffs.

3. APPEAL AND ERROR—EQUITY CASES HEARD DE NOVO—WEIGHT OF EVIDENCE.

In considering equity case *de novo*, Supreme Court is impressed with decision of trial judge on question of fact, when he had advantage of seeing and hearing witnesses, and particularly when decision is supported by credible testimony.

Appeal from Superior Court of Grand Rapids; Verdier (Leonard D.), J. Submitted April 15, 1931. (Docket No. 103, Calendar No. 35,600.) Decided June 25, 1931. Rehearing denied September 10, 1931.

Bill by Stephen Fenwick and another against Paul F. Leonard and others to enjoin the alleged violation of building restrictions. Decree for defendants. Plaintiffs appeal. Affirmed.

*McAllister & McAllister,* for plaintiffs.

*William H. Messinger,* for defendants.

BUTZEL, C. J. John E. Nelson, now deceased, owned a parcel of property in Grand Rapids, Michigan, which he subdivided and named the "Loyalty Park Addition." It is bounded on the north by Hall street, on the east by South Division avenue, on the south by the southerly line of lots facing Rena street, and on the west by South Ionia avenue. There are only 68 lots in the subdivision. Zeno street and Rena street, running east and west, and parallel with Hall street, intersect the subdivision at right angles. In 1916, after Nelson's death, a plat containing no restrictions whatsoever was recorded

by his estate. The property was placed on the market by Decker & Jean, realtors of Grand Rapids. In the advertisements prepared by them in conjunction with the Nelson estate, no restrictions are mentioned. The respective price at which each lot was to be sold was marked on the space occupied by the lot in the plat used for sale purposes and shown to the public. Those fronting on South Division avenue, conceded by all to be for business purposes, were priced at a certain amount per front foot. The other lots, with the exception of lots 11 and 12, were priced from $600 to $825 a lot. Lot 12 is at the southeast corner of South Ionia avenue and Hall street, and was priced at $1,500. Lot 11, east of and adjoining lot 12, was priced at $1,200. Testimony offered by defendants is to the effect that more was asked for these two lots and those facing on Division avenue, because they were to be sold for business purposes and free from restrictions as to use, while all of the other lots were restricted to residence purposes only. It is also claimed that lot 12 was excepted from those burdened with restrictions on account of its poor location for residence purposes and its greater value for business. It is across the street from a fire engine house and a police station. Hall street, on which it fronts, is the only thoroughfare running from the east to the west side of the city, in an area of about two miles in length. Covenants restricting the use to residence purposes were inserted in the deeds or contracts for almost all the other lots, with the exception of those facing on South Division avenue. Three of the ten lots, however, fronting on Hall street, as well as the one at the corner of South Division avenue and lot 12 have not been restricted. A few of the lots have not been sold.

Plaintiffs purchased lot 11 in 1922. The deed restricts its use to residence purposes only, the house to cost not less than $2,500 and to be built 15 feet from the front line, etc. Lot 11 was one of the lots defendants claim was originally planned for business purposes. The lot was originally priced in the plat used for sale purposes at $1,200. Defendant Nelson testified that subsequently when it was found that the lot remained unsold, the price was reduced to $800 plus the cost of improvements, approximating the sum of $250. It was sold to plaintiffs for $1,050, but burdened with restrictions. The restrictive covenants have generally been observed. There have been the following deviations: A three-stall garage was built upon the lot in the rear of lot 11 and a family has occupied the same for many years as a home; two of the lots are occupied by two small churches, and another has been sold for church purposes; lot 2 is occupied by an old building not a residence. Lot 12 in question has been sold to defendants, who purpose using it for an oil station. Plaintiffs, owning lot 11 adjoining, filed a bill to restrain such use. They claim that a reciprocal negative easement was created and attached to lot 12 so that it may only be used for residence purposes. Lot 12 adjoins two lots, whose use has been restricted to residence purposes. Plaintiffs rely on the case of *Sanborn* v. *McLean*, 233 Mich. 227 (60 A. L. R. 1212), where the principle of a reciprocal negative easement, the law of this State, is set forth. In that case lots on Woodward and Hamilton avenues were excepted from the plan, but almost all of the others were restricted to residence purposes. The owner of a corner lot desired to use the rear for an oil station. There was no question but that a reciprocal negative easement had been imposed

on this lot. It was originally planned for residence purposes and a substantial residence stood on it. The decree enjoining the use of the lot for purposes in violation of the restrictions was affirmed by this court. In the instant case, however, it is claimed that lot 12 was planned for business and not residence purposes. Defendants claim that it was always held out and represented to be a business lot. This is denied by plaintiffs. This is the sole question presented to us. It is one of fact.

Notwithstanding the fact that lot 12, a corner lot, adjoins, on each side, lots restricted to residence purposes, we are led to the conclusion, reached by the trial judge, that lot 12 was planned, represented, and held out to be unrestricted. It was always intended to be used for business purposes. The testimony in the case is very much in conflict. Plaintiff Stephen Fenwick, after the completion of his main and cross-examination, was called back after a recess and testified that Mr. Decker, the realtor, had told him that lot 12 was restricted for residence purposes. The latter, however, stated that he did not recall any such conversation. On the other hand, another witness testified that at the time Fenwick purchased lot 11, he called his attention to the fact that lot 12 was not restricted. Fenwick denies this. None of the owners of the other lots testified. Fenwick admits that he did notice that lot 12 was higher priced than any of the other lots, except those on South Division avenue. We are impressed with this latter fact in coming to our conclusion. On account of the proximity of lot 12 to the fire engine house and police station, it appears less desirable for residence purposes than any of the other lots. Other lots at the corner of Zeno and Rena streets, restricted to residence purposes

but containing the same number of square feet as lot 12, were priced at little more than one-half of the amount asked for lot 12.

There being no restrictions of record, inquiry was made by prospective purchasers, and Fenwick was approached in order to obtain his consent to the use of lot 12 for business purposes. Negotiations to that end only establish the fact that the parties desired to avoid a lawsuit or remove any uncertainty as to their rights. The case is not free from doubt, but the burden of proof was upon the plaintiffs. .

In considering an equity case *de novo*, we are much impressed with the decision of a trial judge on a question of fact when he had the advantage of seeing and hearing the witnesses. This is particularly true when his conclusions are supported by credible testimony. He found in defendants' favor and dismissed the bill.

The decree of the lower court is affirmed, with costs.

Wiest, Clark, McDonald, Potter, Sharpe, North, and Fead, JJ., concurred.