CLARK and others, Appellants, vs. GUY DREWS POST OF THE AMERICAN LEGION NO. 88, DEPARTMENT OF WISCONSIN, Respondent.*

*March 14—May 1, 1945.*

* Motion for rehearing denied, with $25 costs, on June 15, 1945.

For the appellants there was a brief by *Hougen, Brady & Murphy* of Manitowoc, and oral argument by *A. L. Hougen.*

For the respondent there was a brief by *North, Bie, Duquaine, Welsh & Trowbridge* of Green Bay, and oral argument by *Walter T. Bie.*

ROSENBERRY, C. J.   On August 8, 1925, the Schuette Real Estate Company, hereinafter referred to as the "company," bought a tract of land in the northeastern part of the city of Manitowoc.   The company platted the land into lots and blocks known as Lincoln Park Subdivision.   The plat was approved and recorded before the sale of any lot was made. The subdivision can be roughly described as made up of three ordinary-sized city blocks designated blocks 3, 4, and 5, containing sixty-two medium-sized lots, and twenty-one additional medium-sized lots in blocks 1, 2, and 6.   The land south and west of the subdivision was a residential section; that to the south was the north end of the most desirable residence property in Manitowoc.   No restrictions nor unusual planning of any kind were indicated on the plat.

On May 15, 1926, the company deeded to D. C. Bleser and Myrtle J. Bleser, his wife, lots 7, 10, 11, and 14, block 4, being the west half of the property involved in this action. The deed contained the following covenant:

"It is hereby agreed by and between both of said parties that the premises are to be used only for residential purposes and no residence to be constructed thereon at an actual cost of less than $10,000."

The grantees carried out their part of the agreement and built upon the premises a large home costing several times $10,000.

On April 11, 1929, the company deeded to Schuette Construction Company lots 8, 9, 12, and 13, block 4, being the east half of the property involved in this action. The deed contained the following covenant:

"It is hereby mutually agreed by both parties that the premises shall be used for residential purposes only."

The construction company subsequently deeded these lots back to the company without a restrictive covenant.

On November 14, 1930, the company deeded these lots to one Earl O. Vits. The deed contained the following covenant:

"It is mutually agreed that the above premises shall be used for residential purposes only."

On August 12, 1931, Vits deeded the same to D. G. Bleser and Myrtle Bleser, his wife, without restrictive covenant. The Bleser home was built on lots 7 and 10. There are no buildings on the other lots but the premises have been landscaped and improved to conform to the rather elaborate dwelling.

Some time after August 12, 1931, D. C. Bleser died and his wife became the sole owner as surviving joint tenant.

On March 8, 1944, Myrtle S. Barrie, formerly Bleser, deeded the entire premises as a gift to the defendant, American Legion, as a memorial to her son, Daniel B. Bleser, killed in action in the present World War. The deed provides that the premises shall revert to the grantor or her heirs in the event the grantee ceases using the premises for its purposes. The deed contained no restrictive covenant.

It is not denied that the defendant intends to use the premises for its purposes which by its articles are as follows:

"The purpose of the corporation shall be: To promote peace and good will among the peoples of the United States

and all nations of the earth; to preserve the memories and incidents of the great war of 1917–1918; to cement the ties of love and comradeship born in service; and to consecrate the efforts of its members to mutual helpfulness and service to their country. . . . The corporation hereby created shall have the following powers: To have perpetual succession with power to sue and be sued in courts of law and equity; to receive, hold, own, use, and dispose of such real estate and personal property as shall be necessary for its corporate purposes."

It appears without dispute that the defendant expects to use the place for the rehabilitation of returning soldiers and as a clubhouse for its members.

The plaintiffs are the owners of lots located in different sections of the plat and bring this action to restrain and enjoin the defendant from using the premises or any part thereof for any other use than a single-family residence and for such other and further judgment, order, and relief as upon the facts shall be deemed just and equitable.

The trial court found:

"That there are no words in the deed from the company to D. C. Bleser and his wife to the effect that the heirs or assigns of either party are bound by the restrictive agreement; that the restrictions mentioned in said deed are only upon the particular lots conveyed, without reference to other lots in the subdivision; that there are no words in said deed to the effect that the restrictions are to be construed as covenants running with the land; that there are no words in said deed to the effect that the conveyance is made upon the condition that the lots are to be used for residential purposes only."

The court further found that there was no reverter clause in the deed; that there was never any general plan or scheme on the part of the Schuette Company or its grantees to restrict the tract to use for residential purposes only; that the company used nine separate kinds of restrictive covenants in its conveyances, and it, and its immediate grantee, conveyed

many lots without any restrictive covenant whatsoever; that lots were sold by the company on January 8, 1927, April 22, 1927, March 5, 1928, and March 15, 1928, without restrictive covenants;

"that I hold and find that, instead of such covenants being inadvertently omitted, as testified by the secretary of the company, such omissions are more due to the fact that no general plan or scheme had been adopted by the company to confine the plat to residence purposes only; that the restrictive covenants were inserted in the deeds for the benefits of the grantors only."

The court further found that other deeds were made intentionally without a restrictive covenant, and that from the time of the plat of the subdivision to August 3, 1944, one hundred twenty sales of lots in the subdivision were made and of those fifty-two conveyances were without any restrictive covenants.

The court further found that the value of plaintiffs' property will not be reduced by the conveyance to the Legion and the use of the Legion property for Legion purposes.

As conclusions of law, the court found—

"that the covenants upon which plaintiffs' causes of action are based are personal covenants, binding only upon the parties to them, and do not run with the land."

The plaintiffs' complaint was dismissed accordingly.

Counsel for the plaintiff advisedly states that the questions involved here are questions of law and not of fact. No attack is made by the plaintiffs upon the facts as found by the court. Counsel argues, however, that the findings of fact in this case are not entitled to the weight ordinarily and customarily given to the findings of a trial court but cites no authority to that proposition. An inquiry as to the intention of a party presents a question of fact, hence we see no reason why the findings in a case of this type should not be given weight as are the findings of the trial court in other cases.

This is especially true for as this court said in *Boyden v. Roberts* (1907), 131 Wis. 659, 669, 111 N. W. 701:

"The controlling question in all cases seems to be whether the grantor intended to create an equitable servitude which should be appurtenant to the estate or intended for the mutual benefit of the respective grantees of portions of the estate for whose benefit the covenant was made." See Restatement, 5 Property, p. 3196, sec. 531.

Whether an actor intended or did not intend to do a certain act or to produce a certain result is a question of fact. *Northwestern Iron Co. v. Industrial Comm.* (1913) 154 Wis. 97, 142 N. W. 271; *Hudson v. First Trust Co.* (1929) 200 Wis. 220, 228 N. W. 121.

There is a great deal of confusion in the cases dealing with the question of restrictive covenants. We do not find it necessary in order to reach a determination in this case to review the law on this subject because of the comprehensive statement of the law in *Boyden v. Roberts, supra,* and subsequent cases. We may say in passing that we recognize that the use of the words "heirs and assigns" is not necessary to the creation of an equitable servitude which will pass with the land. However, the use of those words is a strong indication of the purpose of the grantor although not controlling. See *Epting v. Lexington Water Power Co.* (1935) 177 S. C. 308, 181 S. E. 66, 102 A. L. R. 773.

In addition to the matter set out by the trial court as grounds for decision, it is considered that it is especially significant in this case that the covenant, while it bound the grantee, conferred upon the grantee no corresponding benefit. It was wholly for the grantor's benefit. The language of the conveyance given by the company to the Blesers is:

"It is hereby agreed by and between both of said parties that the premises are to be used only for residential purposes."

This is a personal covenant binding as between the parties to the instrument, but it gives the grantee no protection as to the use which may be made of the adjoining property owned by the grantor. It leaves the grantor free to deal with other lots in the subdivision in any way that it may see fit.

Bearing upon the question of intention it is significant that on August 31, 1927, one year and three months after the conveyance to the Blesers, the company conveyed lots 5 and 6 of block 4 to Earl O. Vits. The covenant in the conveyance to Vits was as follows:

"Provided, however, and this conveyance is made upon the express condition that the lots above described shall be used and occupied for residence purposes only, and the grantor hereby covenants for itself and its assigns, that all conveyances made by it of any lots in said Lincoln Park Subdivision shall contain a restriction limiting the use and occupation of said lots for residence purposes only."

If the company had had any intention of creating a restricted residential subdivision it would have inserted similar covenants in other deeds to lots in the subdivision, which it did not do.

We conclude from the findings of the court and the undisputed facts in the case that there was no intention to restrict the lots in question to residential purposes for the benefit of anyone other than the grantors and that the trial court correctly so concluded. The only purpose of the grantors appears to have been to preserve the status of the property until such time as it should be able to dispose of adjoining lots.

*By the Court.*—Judgment affirmed.