BUCKLEY v. ROMAN CATHOLIC ARCHBISHOP OF DETROIT.

1. COVENANTS—CONSTRUCTION.
Restrictive covenants in a deed describing a parcel of land by metes and bounds which grantors were conveying from a 160-acre farm they owned must be interpreted in the light of the situation then existing and of the results sought to be accomplished.

2. SAME—AGREEMENT TO INSERT COVENANTS IN FUTURE CONVEYANCES.
A sellers' agreement to insert the same covenants and restrictions in all future contracts and deeds covering parcels of land situated within 160-acre farm which the grantors owned, with two express exceptions did not subject the portion of the tract retained by the sellers to such restrictions while still owned by them.

3. SAME—CONSTRUCTION IN LIGHT OF CIRCUMSTANCES INVOLVED.
Each case involving the enforcement of restrictive covenants must be determined with reference to its own facts and the controlling factor in each instance is the intention of the parties as indicated by the language of the conveyance or agreement involved, construed in the light of the general purpose indicated and the circumstances of the case.

---

REFERENCES FOR POINTS IN HEADNOTES

[1–3] 14 Am Jur, Covenants, Conditions, and Restrictions §§ 210, 211.
[2, 6–9] 14 Am Jur, Covenants, Conditions, and Restrictions §§ 199–202.
[2, 6–9] Express covenant restricting property conveyed as raising a corresponding implied covenant as to property retained by the grantor. 60 ALR 1216; 144 ALR 916.
Omission from deed of restrictive covenant imposed by general plan of subdivision. 4 ALR2d 1364.
[4, 5] 14 Am Jur, Covenants, Conditions, and Restrictions § 212.
[10] 3 Am Jur, Appeal and Error § 959.

4. SAME—RECIPROCAL NEGATIVE EASEMENT—BURDEN OF PROOF.

The burden of establishing a claimed restriction by way of reciprocal negative easement is on the plaintiff.

5. EQUITY—RESTRICTIONS ON THE USE OF PROPERTY.

Courts of equity do not aid one man to restrict another in the use to which he may put his property unless the right to such aid is clear.

6. COVENANTS—RECIPROCAL NEGATIVE EASEMENTS—SCHEME OF RESTRICTIONS—COMMON OWNERSHIP.

There must be proof of a "scheme of restrictions" originating from a common owner, where there is no express restriction in the chain of title of the particular lot the use of which is sought to be restricted through reciprocal negative easements.

7. SAME—RESTRICTION ON SINGLE LOT.

A restriction placed in the title to a single lot does not establish a plan which will give rise to a reciprocal negative easement.

8. SAME—RECIPROCAL NEGATIVE EASEMENT—GENERAL PLAN.

To establish a general plan sufficient to raise a reciprocal negative easement it is necessary that the plan must have been maintained from its inception and must have been understood, accepted, relied on, and acted upon by all in interest.

9. SAME—AGREEMENT TO INSERT RESTRICTIONS IN SUBSEQUENT CONVEYANCES OF FARM LAND—NOTICE.

Defendant grantee in subsequent conveyance of part of 160-acre farm, who had neither actual nor constructive notice of his grantors' previous covenant with grantees of other parcels that the grantors would insert covenants restricting use of the premises to one-family residences with appurtenant buildings in later conveyances, did not acquire the parcel, expressly conveyed for religious and educational purposes, subject to the restrictions contained in the previous conveyances.

10. SAME—RECIPROCAL NEGATIVE EASEMENTS—DAMAGES—EVIDENCE.

Finding of 3 circuit judges sitting *en banc* that plaintiffs' claim that they were entitled to reciprocal negative easements in the land retained by their grantors who had agreed to insert covenants in future conveyances of other tracts from their 160-acre farm restricting use of tracts therein conveyed to single-family residences and appurtenant buildings had not

been sustained by the proofs and that on equitable principles they were not entitled to the issuance of the discretionary writ of injunction is not disturbed under record presented, including a failure of proof in support of additional claim that defendants' use of their premises for religious and educational purposes would cause depreciation in value of plaintiffs' home or that they would otherwise sustain a financial loss.

BOYLES, REID, and DETHMERS, JJ., dissenting.

Appeal from Oakland; Hartrick (George B.), Doty (Frank L.), and Holland (H. Russel), JJ., sitting *en banc.* Submitted October 13, 1953. (Docket No. 86, Calendar No. 45,825.) Decided April 6, 1954.

Bill by Edward M. and Agnes M. Buckley, Frank J. and Mildred DuFrain, and others, against Edward Mooney, Roman Catholic Archbishop of the Archdiocese of Detroit, and Giles L. Bartol, pastor of Our Lady of Refuge Parish Catholic Church, to restrain violation of restrictions in deed. Caleb E. and Ruth M. Summers ordered interpleaded as defendants. Bill dismissed. Plaintiffs appeal. Affirmed.

*Howlett, Hartman & Beier (Harold E. Howlett,* of counsel), for plaintiffs.

*George A. Cram* and *Monaghan, Hart & Crawmer (Marion H. Crawmer,* of counsel), for defendants archbishop and pastor.

*Glenn C. Gillespie,* for defendants Summers.

REID, J. (*dissenting*). Plaintiffs filed the bill of complaint in this case to obtain a temporary, and later a permanent, injunction restraining defendants from using the area of land in question for any

purpose other than the construction of single-family dwellings in accordance with the restrictions contained in a deed from defendants Summers to plaintiff Buckley and wife. From a decree for the defendants, plaintiffs appeal. The original defendants, the archbishop of the archdiocese and the pastor of the parish, petitioned the court to implead as defendants, Caleb E. Summers and Ruth M. Summers, his wife, the former owners of the lands described in their deed to plaintiffs, which former owners are claimed by the plaintiffs to have created by their said deed to plaintiffs, the restrictions relied upon by plaintiffs. Summers and wife were ordered by the court to be impleaded accordingly. We refer to the archbishop and the pastor of the parish as defendant church.

The first important question in the case is whether the plaintiffs are entitled to enforce, as against the defendant church, restrictions restricting the use of the property purchased October 14, 1941, by plaintiffs from defendants Summers.

Plaintiffs Buckley and wife are hereinafter referred to as plaintiffs without having reference to the other persons who stand as plaintiffs in the case. Plaintiffs claim that they purchased land owned by the plaintiffs and being part of a tract of about 160 acres from defendants Summers on October 14, 1941, and that they timely put their deed on record, and that in the deed were set forth restrictions. The restrictions are somewhat lengthy and are set forth in detail in the record.

The deed in question to plaintiffs from defendants Summers contained the statement, "The foregoing grant is expressly subject to the following covenants and restrictions, and the said purchaser in consideration of the seller to insert the same covenants and restrictions in all contracts and deeds covering par-

cels of land situate and being," the description of lands following which includes the whole tract of 160 acres or thereabouts and was followed by the words, "excepting therefrom the W'ly 20 acres more or less of the last described parcel, also except business and boat basin area."

Among other things contained in the deed under the head of restrictions was a restriction (with other restrictions) against any building being erected or altered in said subdivision (meaning the entire 160 acres) for any purpose other than "one single detached dwelling occupied by the purchaser, or his lessee or guests and for residence purpose only."

Plaintiffs in general terms claim that the whole 160-acre tract, except the 20 acres hereinafter noted, was subject to the restriction restricting the use of the premises in practical effect to single detached dwellings occupied or used only for residence purposes.

It is further the claim of plaintiffs that the restrictions are to be construed as excepting a definite area of approximately 20 acres which was bounded on the easterly by a hedgerow and line of poles, being the same property that was used in connection with the old-time large mansion located approximately in the middle of the 20 acres.

Plaintiffs further claim that the express covenant in the deed to plaintiffs that defendant grantors would impose similar restrictions in conveyances of the remaining land of grantors, has the effect that a subsequent purchaser of any portion of the land remaining in the ownership of the grantors (Summers) shall take title from the grantors Summers and wife subject to the restrictions. The restrictions are not set forth in the deed to the church, but plaintiffs' deed which was of record expressly required defendants Summers to insert such restrictions in all subsequent deeds of lands in the tract

of approximately 160 acres.  Plaintiffs cite *McQuade* v. *Wilcox,* 215 Mich 302 (16 ALR 997), and *Phillips* v. *Lawler,* 259 Mich 567.

Plaintiffs further claim that they brought their suit to enjoin the construction of buildings by defendant church prior to the commencement of any construction by the church and are therefore not barred by laches.

The court in a revision of their opinion briefly stated their finding on issues involved as the basis for the decree dismissing the bill and denying the injunction as prayed for by plaintiffs, as follows:

"A general plan of restrictions did not exist which would be applicable to the defendants' land at the time of purchase.  There were no physical circumstances that would put the defendants upon notice that the lands purchased were subject to the encumbrance of a prior restriction.  The statement in the Buckley metes and bounds deed and others having reference thereto pertaining to the use of the land, partook of the nature of a personal covenant and was contingent upon the prospective development of the whole area which was consummated only in part. A subsequent deed to the same property and to the same parties with a definite description as issued with modification, was recorded after a declaration of restrictions was filed which omitted the defendants' land therefrom.

"The defendants received and recorded a deed which limited the use of their land to their specific intended purpose.  The defendants evidenced that purpose in various ways through their several acts. This suit was only instituted after an unsuccessful attempt to prevent that use as is disclosed in a zoning ordinance case entitled *'Roman Catholic Archbishop of Detroit* v. *Village of Orchard Lake,* 333 Mich 389.'"

The defendant church and the impleaded defendants claim that the finding of the trial court on the issues involved was correct. Defendant church also claims that plaintiffs by acceptance of a correction deed (the second deed referred to in the foregoing quotation) waived the restrictions in the first deed to plaintiffs, as to which, however, plaintiffs claim there was no such waiver but that on the contrary the second (correction) deed recited and reaffirmed the restrictions relied on by plaintiffs.

Impleaded defendants argue that because the restrictions mentioned in plaintiffs' deed are captioned, "Restrictions—Harbor Hills," that therefore it is to be assumed that the restrictions mentioned in the deed refer to an unexecuted or unrecorded plat and that so far as public records are concerned, the covenant to restrict is vague and uncertain and the restrictions not enforceable. However, there is nothing in the deed in question nor in the record in this case to indicate that the phrase Harbor Hills is anything but a general designation of the area involved regardless of a plat and in the absence of proof, we do not feel entitled or required to draw the inference that the restrictions are limited to some plat not indicated in the deed nor shown in the record to be then sketched and in writing. Impleaded defendants covenanted to restrict all the remaining area (except 20 acres) without making any exception that the restrictions would only apply after some plat should be executed.

Impleaded defendants argue that the burden is on plaintiffs to prove the restrictions and that all doubts regarding the nature, extent and effectiveness of the restrictions are to be resolved in favor of the unrestricted use of the property, citing several cases.

In this case the proofs of the restrictions are undenied. The restrictions are *express* in character and are not illegal. The deed containing the restric-

tions was recorded promptly after its execution preceding the first deed in question to the church. In the first deed to plaintiffs the general description of the whole area of approximately 160 acres clearly included all the lands that were deeded to the church, either in the first or second deed to the church, subject only to an exception of 20 acres hereinafter discussed.

The restrictions of building of dwelling houses and certain ancillary buildings, above referred to, are as follows:

"FIRST:

"No building shall be erected or altered or used on any lot whatsoever in said subdivision (except as herein stated) for any purpose whatsoever than—

"(1)  One single detached dwelling occupied by the purchaser, or his lessee or guests and for residence purpose only.

"(2)  Other buildings incident and accessory to a country home; the use of which is restricted and defined as follows:

"(a)  Garage.  To be used to house automobiles of the purchaser, lessee or guests and for the use of which no charge is made.  Living quarters for the servants of the purchaser or his lessee or guests.

"(b)  Dwelling.  For the use of servants of the purchaser, lessee or guests.

"(c)  Guest House.  For the use of guest only and not for rent.

"(d)  Greenhouse.  For commercial purposes is prohibited.

"(e)  Walls, fences, docks, tennis courts, garden house, tea houses and other similar and unobjectionable appurtenances to a country home.

"(3)  The purpose of these restrictions being to limit the use and occupancy of any one single lot to any one single family with their necessary servants and appurtenances.  In case the purchaser of any lot, leases his premises, the premises must be leased as a whole; the leasing or subleasing of any part

thereof is expressly forbidden. In no case shall a temporary structure be permitted."

We have recently upheld restrictions to residential purposes to properly exclude buildings for church purposes and use. See *Smith* v. *First United Presbyterian Church,* 333 Mich 1; *Abrams* v. *Shuger,* 336 Mich 59.

It is clear that the restrictions just above cited, being in plaintiffs' first deed, must under our former rulings be held to exclude the use for church purposes to which the defendant church intends to put its property in question.

Defendant church argues that because the restrictions are not set forth in the deed to the church, they are for that reason not applicable to the lands to which the defendant church received its title, and defendant church further argues that the application of the restrictions to the lands would be dependent upon an application by inference. However, the deed itself expressly recites that the grantors shall place such restriction in each of its deeds to lands within the tract of approximately 160 acres (except the 20 acres), and therefore the restrictions being of record when the church received its deed, the church must be held to have received its deed subject to the restrictions because of express covenants of record. See 16 ALR 1013:

"The weight of authority is to the effect that if a deed or a contract for the conveyance of one parcel of land, with a covenant or easement affecting another parcel of land owned by the same grantor, is duly recorded, the record is constructive notice to a subsequent purchaser of the latter parcel. The rule is based generally upon the principle that a grantee is chargeable with notice of everything affecting his title which could be discovered by an examination of the records of the deeds or other muniments of title of his grantor."

"The weight of authority is to the effect that if a conveyance of one parcel of land containing a restriction operating as a negative easement in respect of another parcel of land owned by the grantor is duly recorded, the record is constructive notice of the negative easement to a subsequent purchaser of the latter parcel." 17 Am Jur, p 1021.

In *McQuade* v. *Wilcox*, 215 Mich 302 (16 ALR 997), we cite from 2 Tiffany on Real Property (2d ed), p 2188, and also cite *Lowes* v. *Carter*, 124 Md 678 (93 A 216); *King* v. *Union Trust Co.*, 226 Mo 351 (126 SW 415); and *Holt* v. *Fleischman*, 75 App Div 593 (78 NYS 647).

In the *McQuade Case* we say, page 304, that in the original deed to the property of plaintiffs Stanton, the language there found is as follows:

"These conditions are for the benefit of all present and future owners of property in this subdivision and are agreed to by all such owners and are to remain in force until July 1, 1935, and shall then terminate."

Further, at pages 305, 306, we say:

"By each of these deeds she covenanted that the restrictions were for the benefit of all present and future owners. She was the present owner of lot 2. By each deed she restricted the use to which the lot sold could be put, and by the same instrument restricted a different use of her own lot. The restrictions were mutual. Her grantees and the land conveyed were bound and by the same instrument she and her residential lot were bound. When made the restrictions were alike beneficial to her and her grantees and she cannot now, having accepted the benefits of the restrictions, and the purchase price enhanced by them, disregard her own covenant and free her own land from its effect."

Further, at pages 307, 308, we say:

"This leaves for consideration the contention of defendant Shelbourne Company that it purchased without notice of the restrictions and is, therefore, not bound by them. This presents the most difficult question in the case. Before considering the legal question let us restate some of the pertinent facts: Defendant Wilcox originated the general plan of restricting all the lots in the plat to use for residential purposes only; this included the lot upon which her home was located; this plan she incorporated in the deeds executed by her which were recorded. By these restrictions reciprocal negative easements were created (*Allen* v. *City of Detroit,* 167 Mich 464 [36 LRA NS 890]) alike upon the land sold and upon lot 2. The question, therefore, presented is whether the recording of the deeds creating these reciprocal negative easements gave constructive notice to subsequent purchasers of lot 2."

After citing certain authorities and discussing the matters involved, we say further at page 311:

"Upon principle we think the rule adopted by Mr. Tiffany and the Maryland, Missouri and New York courts is the correct one. By the deeds executed by Mrs. Wilcox a negative easement was by her placed upon lot 2. When these deeds were placed on record this gave constructive notice of that negative easement. Defendant Shelbourne Company was not a bona fide purchaser and took subject to the rights of the plaintiffs."

Cited in 19 Am Jur, p 316, for the proposition that the court considers as actually having been performed acts which have been agreed to be done, are several cases, including United States supreme court cases and cases from several States.

Further, 19 Am Jur, pp 316, 317, states, "The maxim 'equity regards as done that which ought to be done,' is said to be the foundation of equitable prop-

erty rights, estates, and interest," citing *Davis* v. *Williams,* 130 Ala 530 (30 So 488, 54 LRA 749, 89 Am St Rep 55).

The doctrine of equitable conversion based on the equitable maxim that equity considers as done that which was agreed to be done, was upheld by this Court in *Bowen* v. *Lansing,* 129 Mich 117 (57 LRA 643, 95 Am St Rep 427), cited in 19 Am Jur, p 15.

From the foregoing Michigan cases and the great weight of authority outside Michigan, it is clear that defendants Summers impressed upon their remaining lands the restrictions contended for by plaintiffs and it is further clear that defendant church took charged with notice of the restrictions.

The defendant church further asserts that the plaintiffs having received a "correction" deed, thereby waived the restrictions that were in the .former deed, the latter. deed having some further restrictions.  However, the later deed thus referred to, received by plaintiffs, makes a special reference to the restrictions in plaintiffs' former deed and we cannot escape the conclusion that the restrictions are intended by the parties to the second deed to plaintiffs still to apply to the property in question and are therefore ratified and not waived by the second deed to plaintiffs.

Defendant church also bases an argument upon the words in plaintiffs' first deed which except from the general description of lands to which the restrictions are to apply of about 160 acres, as follows: "Excepting therefrom the W'ly 20 acres more or less of the last described parcel, also except business and boat basin area," which the defendant church maintains would exclude at least some of their lands from the operation of the restrictions.  It is clear from the record that none of defendant church's lands are in the "business and boat basin area." However, defendant church claims that the phrase,

"W'ly 20 acres more or less," is so indefinite as to make the restrictions unenforceable. It appears from an examination of the boundaries of the tract of about 160 acres, that the 160-acre tract is bounded on the northerly by Cass lake, on the easterly by the center of Orchard Lake road, on the southerly by the center line of Commerce road and on the westerly by the west line of section 11, so that an exemption of the westerly 20 acres of such general description being indicated by no dividing line on the east side of the 20 acres excepting that it is 20 acres more or less, it is to be assumed that the 20 acres in question is bounded on the east by a line parallel with the westerly boundary line of the general area. See *Collins* v. *Dressler,* 133 Ind 290 (32 NE 883); also, *Laing* v. *McClung,* 103 W Va 341 (137 SE 744), in which latter case the court says, p 344:

"We have then a straight line for both the eastern and western sides of said tract. The rule is stated in 18 CJ, p 293, that a deed for a particular quantity of land on the side of a tract will include such quantity in the form of a parallelogram."

It appears that the westerly part which is thus excluded from the operation of the restrictions, of about 20 acres, includes an old-time large country mansion and the grounds surrounding it, which if bounded on the east by a line drawn as indicated by hedgerow and telegraph poles, would amount to 15.884 acres. However, if we adopt the eastern boundary of the 20 acres excluded from the restriction as being a line indicated by such hedgerow and line of poles, we would thereby exclude from the operation of the restrictions only 15.884 acres. This is such a wide discrepancy from the words, "W'ly 20 acres more or less," that we do not feel constrained to adopt such indicated line and under the authority above cited, we therefore adopt the line paralleling

the westerly line of the whole general tract of 160 acres which will cause the restrictions to be inoperative on a tract of 20 acres thus excepted.

Defendants further claim that the plaintiffs are guilty of laches in beginning this suit and the suit therefore should be considered barred. Defendants did no act of even beginning a construction prior to the beginning of the suit and, hence, plaintiffs were not under an obligation to begin the suit to stop them from further proceeding. In the meantime, the village ordinance had forbidden the erection by the church of its contemplated buildings for church use and purposes, which ordinance we held invalid to that extent in the case of *Roman Catholic Archbishop of Detroit* v. *Village of Orchard Lake,* 333 Mich 389. In view of the existence of the ordinance, plaintiffs evidently anticipated that the defendant church would not erect the buildings that are forbidden by the restrictions. Shortly after the decision of this Court declaring the ordinance in that particular invalid, plaintiffs began the present suit. Plaintiffs are not guilty of laches and we conclude, therefore, not to dismiss the suit.

Defendants argue that a general plan of restrictions did not exist, as to which, however, we find that the restrictions set forth sufficiently the purposes and property to which they are applicable. The general plan is further set forth in detail in the so-called correction deed to plaintiffs, in which correction deed the restrictions contended for by plaintiffs, are reiterated. We look in vain for any court decision which says that restriction of lands to residential purposes is a matter to be frowned down on by the court.

There is nothing in the restrictions in question to characterize the restrictions as a personal covenant and nothing which required as a prerequisite or

otherwise, the actual development of the whole area of approximately 160 acres.

It is suggested that the language contained in the deed to plaintiffs did not serve to subject the land retained by the Summers, while owned by them, to the restrictions, but, at most, constituted only a promise to make the restrictions applicable in the future to such portions of that land as they might thereafter sell; that such promise would have been unnecessary if the parties had intended to subject all of the land to the restrictions immediately; and that, hence, the land deeded to defendant church was not subject thereto when the latter acquired it. The intent of the parties at the time, as ascertained from the entire instrument, is controlling. *Holderness* v. *Central States Finance Corporation,* 241 Mich 604; *Bastendorf* v. *Arndt,* 290 Mich 423 (124 ALR 445).

The deed to plaintiffs, as well as the deeds to 2 other purchasers of pieces of said tract, contained the express provision that:

"The purchaser in accepting this contract, hereby covenants and agrees with the seller in order to assist the said seller *in carrying out and maintaining his general plan* for the sale and development of said property and the preservation of the general character of the neighborhood as follows:—

"First: No building shall be erected or altered or used on *any lot whatsoever in said subdivision* (except as herein stated) for any purpose whatsoever than—

"(1) One single detached dwelling." (Italics supplied.)

It is difficult to conceive of a more clear-cut expression of intention to make the restrictions applicable to the land retained by the Summers as well as to that conveyed to plaintiffs and to 2 other purchasers. Should that clear intent be defeated by the fact, if it be a fact, that the deed was unartfully

drawn to include that which has been styled "not necessary," namely, the statement that the consideration for the purchasers' above-mentioned covenant and agreement and acceptance of "this contract" was the promise of the Summers to incorporate the same restrictions in all contracts and deeds covering parcels of the land in question? It is obvious from reading all the language in the deed pertaining to the restrictions that the expression of such promise by the Summers was the means selected by the parties to impose the restrictions on all the land and to lend emphasis to their clear intent in that regard. Accordingly, that statement of the sellers' promise to incorporate restrictions in future deeds should not be permitted to defeat the plain agreement of parties to make the restrictions immediately applicable to the entire tract. As said in *Tabern* v. *Gates,* 231 Mich 581, 583:

"We are not so much concerned with the rules of syntax or the strict letter of the words used as we are in arriving at the intention of the restrictor, if that can be gathered from the entire language of the instrument."

Does the language in plaintiffs' deed which comprises the restrictions agreement between the parties leave room for the construction that the Summers were thereafter free to erect buildings on the land retained and owned by them in violation of those restrictions? We think such construction would fly in the face of the clearly-expressed intent of the parties. It follows that the restrictions applied both to lands sold and lands retained by the Summers, and that defendant church took subject thereto.

*Denhardt* v. *De Roo,* 295 Mich 223, in which the restriction contained in a deed was by express terms made applicable only to the lot therein conveyed and,

not to the adjoining property retained by the seller; *Clark* v. *Guy Drews Post of the American Legion,* 247 Wis 48 (18 NW2d 322), in which that same factual situation obtained and afforded the very basis for the court's decision therein; and *Saari* v. *Silvers,* 319 Mich 591, in which the common grantor had disposed of the lot in question without restrictions before the conveyance of other lots by deeds containing restrictions, are scarcely controlling in the instant case where the restrictions are by express terms made applicable not alone to the lot conveyed to plaintiffs, but to "any lot whatsoever in said subdivision" by a deed executed and delivered to plaintiffs and recorded before the common grantor conveyed the property in question which was acquired by defendant church.

It is also stressed that plaintiffs offered no proofs to show that defendant church's projected use of its property "would cause any depreciation in the value of plaintiffs' home" or other financial loss to them. That such showing is not essential to their right to enforce the restrictions is well established in Michigan. *Austin* v. *Van Horn,* 245 Mich 344; *Smart Farm Co.* v. *Promak,* 257 Mich 684.

Defendant church claims that the deeds to plaintiffs are void because of violation of the plat act. It is sufficient to note that, notwithstanding a violation of the platting act (if any existed, which we do not find), the deed would not be void; it would only be voidable at the option of the plaintiffs. We quote from the statute in question, the plat act, in part as follows:

"Any sale of lands subdivided in violation of the provisions of this act, or any sale of any lot, part or parcel in violation of section 78 of this act, shall be voidable at the option of the purchaser thereof." CL 1948, § 560.78a (Stat Ann 1953 Rev § 26.508 [1]).

Other questions involved do not require further attention. The decree appealed from should be reversed. Plaintiffs should be entitled to the temporary and permanent injunctions prayed for. Costs to plaintiffs.

BOYLES and DETHMERS, JJ., concurred with REID, J.

CARR, J. I am not in accord with the conclusion reached by Mr. Justice REID who has written for reversal. The material facts are set forth in his opinion. The determination of the primary question at issue turns on the construction to be given to the language of the conveyance by defendants Summers to Mr. and Mrs. Buckley, herein referred to as the plaintiffs, on October 14, 1941. At that time the grantors were the owners of a large tract of land in the village of Orchard Lake, that in previous years had been used principally for agricultural purposes. No part of it had been subdivided, but apparently the owners had in mind a subdivision of at least a portion of the property, or its division into parcels to be used for the purposes of single residences with appurtenances deemed essential to country homes. The record indicates that the parcel conveyed to the plaintiffs was the first one sold.

Does the language of the deed indicate that it was the intention of the parties at the time that the remainder of the tract, subject to the specified exceptions, should *while owned by the grantors* be subject to the restrictive covenants set forth in the conveyance to plaintiffs, or, as determined by the 3 judges who heard the matter in the circuit court, was the expressed undertaking on behalf of defendants Summers to insert such restrictions in conveyances of lots or parcels in the tract that they might execute in the future in the nature of a personal covenant merely? The provisions in question must be

interpreted in the light of the situation then existing and of the results sought to be accomplished. If the land retained by the Summers following the conveyance became immediately subject to the restrictions under the reciprocal negative easement theory, the conclusion follows that they could not have used their property for the purposes for which it had been previously used, or otherwise than for a single residence and other buildings incident to a country home. It is significant that the agreement was in terms that the restrictions should be inserted in *future conveyances* of lots and parcels. The parties did not see fit to provide specifically that the balance of the tract should be, while still owned by the Summers, subject thereto. The language used may not fairly be interpreted as indicating any such purpose or intent.

Plaintiffs do not claim the existence of any general plan of development. As specifically set forth in the brief of their counsel, they do not ask relief on the basis of any such plan. Neither do they contend that the facts of the case justify a conclusion that the restrictions which they seek to have enforced on the land retained by the Summers were created by implication. It is conceded that *Sanborn* v. *McLean*, 233 Mich 227 (60 ALR 1212); and *Arlt* v. *King*, 328 Mich 645, are distinguishable from the instant controversy on this ground. A like comment may be made with reference to other decisions resting on the theory of reciprocal negative easements by implication.

It is the position of plaintiffs on this appeal that the language of the conveyance to them created legal rights in the nature of easements in the property retained by their grantors, other than the land expressly excepted. In support of their contention they rely on *McQuade* v. *Wilcox*, 215 Mich 302 (16 ALR 997). There the defendant being the owner of

farm land near Royal Oak platted a portion of it and recorded the plat. The property was designed to be a high-class residential subdivision, and its character was advertised for the benefit of prospective purchasers. A "general plan was adopted to make it a high-class restricted residential district." Substantial homes were constructed on lots in the subdivision, which were sold subject to single-residence restrictions. An additional subdivision was platted adjoining the one in question. Defendant retained the ownership of lot 2 in the plat of the first subdivision. After substantially all of the lots in the subdivision had been sold and expensive residences erected thereon, defendant entered into a contract for the sale of lot 2 to be used for restaurant or cafe purposes. The court found that by her deeds defendant had covenanted that the restrictions imposed were "for the benefit of all present and future owners." It was pointed out that defendant was the "present owner" of lot 2, and that she had by the conveyances executed by her imposed on her lot the same restrictions that she had imposed on others.

The factual situation in the case at bar is materially different from that in the *McQuade Case.* We are not dealing here with a situation involving subdivided property, many lots in which had been sold for exclusive residential purposes under restrictions to which all present and future owners were expressly subjected. Rather, we have a conveyance of a parcel from a farm, the owners of which agreed that in making future conveyances of lots or parcels therefrom they would insert the restrictions in question. It may be noted in this connection that had the parties subjected the land retained by the Summers, except as specified, to the restrictions it would not have been necessary to specifically provide for putting the restrictions in future contracts and deeds. The parties did not elect to impose such

restrictions on the land retained by the grantors while owned by them. Had they done so, it is obvious that the recording of the deed would have resulted in constructive notice thereof to any subsequent purchaser of a lot, or parcel of land, within the limits of the tract in question, except in the westerly 20 acres thereof or in the business and boat basin area. They did not follow such course, but inserted in lieu thereof the agreement with reference to future conveyances of lots and parcels from the farm.

Plaintiffs also rely on *Phillips* v. *Lawler,* 259 Mich 567. There suit was brought by the plaintiff to annul an easement and to remove building restrictions, plaintiff relying in part on provisions of the zoning ordinance of the city of Lansing claimed to be in conflict with the restrictions in question. The claim was rejected by this Court. The greater part of plaintiff's property was sold in 1923 by the then owners, together with an easement over land retained by the grantors, subject to the following agreement:

"Said first parties further agree for themselves, their heirs, grantees and assigns, as a condition to the sale of the premises herein deeded to second party, that after the rug factory, which is now owned and operated by first parties on the premises retained and owned by them and being immediately to the north of said above-described easement, is no longer used by first parties for business in connection with a rug factory, that thereafter no building nor structure shall be used, built or maintained thereon for any purpose except for a private residence and a private garage either in connection with the residence or built separately therefrom."

It will be noted that the language of the conveyance expressly subjected land retained by the grantors to the restricted use. The language of the conveyance left no doubt as to the intention of the

parties. The grantors expressly undertook to impose on land that they continued to own, and during such time as they continued their ownership, the easements in question. Because of the facts involved, the *Phillips Case* is not controlling in the present controversy.

Attention is also directed by counsel to *Finley* v. *Glenn,* 303 Pa 131 (154 A 299). There the conveyance involved required that the grantors should impose the building restrictions recited therein upon all their other lots or pieces of ground fronting on a designated street. The deed also recited that "it is mutually understood that the above restrictions are not to apply to or bind any other land of the said grantors excepting the above mentioned lots." The language quoted clearly indicates an intent that the building restrictions set forth in the conveyance should bind the specified land of the grantors.

Each case of this nature must be determined with reference to its own facts. The controlling factor in each instance is the intention of the parties as indicated by the language of the conveyance or agreement involved, construed in the light of the general purpose indicated and the circumstances of the case. Certain general principles have, however, been established by prior decisions of this Court. In *Denhardt* v. *De Roo,* 295 Mich 223, 228, 229, it was said:

"The burden of establishing the restrictions by way of reciprocal negative easement is on plaintiffs. *Fenwick* v. *Leonard,* 255 Mich 85; *Grant* v. *Craigie,* 292 Mich 658.

" 'Courts of equity do not aid one man to restrict another in the use to which he may put his property unless the right to such aid is clear.' *Casterton* v. *Plotkin,* 188 Mich 333, 344.

"It has been said that only under unusual circumstances will the use of property be restricted other

than by provisions in the conveyance on which the title rests. *Miller* v. *Ettinger*, 235 Mich 527; *Kime* v. *Dunitz*, 249 Mich 588. Where there is no express restriction in the chain of title of the particular lot the use of which is sought to be restricted, there must be proof of a 'scheme of restrictions' originating from a common owner. *Williams* v. *Lawson*, 188 Mich 88; *McQuade* v. *Wilcox*, 215 Mich 302 (16 ALR 997); *Kiskadden* v. *Berman*, 244 Mich 473; *Nerrerter* v. *Little*, 258 Mich 462; *Taylor* v. *State Highway Commissioner*, 283 Mich 215; *Grant* v. *Craigie*, *supra*. A restriction placed in the title to a single lot does not establish such a plan. *Taylor* v. *State Highway Commissioner*, *supra*. The general plan must have been 'maintained from its inception,' and 'understood, accepted, relied on, and acted upon by all in interest' (*Allen* v. *City of Detroit*, 167 Mich 464, 469 [36 LRA NS 890]). *Library Neighborhood Association* v. *Goosen*, 229 Mich 89; *French* v. *White Star Refining Co.*, 229 Mich 474; *Signaigo* v. *Begun*, 234 Mich 246; *Kime* v. *Dunitz*, *supra*. The scheme must have its origin in a common grantor; 'it cannot arise and fasten upon one lot by reason of other lot owners conforming to a general plan' (*Sanborn* v. *McLean*, 233 Mich 227 [60 ALR 1212]). See, also, *Casterton* v. *Plotkin*, *supra*, and *Miller* v. *Ettinger*, *supra*. Plaintiffs have failed to produce evidence tending to establish a plan founded by the common grantor. Nor is their case aided by the observation of Mr. Justice BIRD in *French* v. *White Star Refining Co.*, *supra* (p 477), that:

"'One of the best evidences that it was intended to be a restricted district is the fact that the restrictions have been observed and nothing but dwellings erected.'"

Under the facts in the case and applicable legal principles it was held that plaintiffs had failed to establish the reciprocal negative easement claimed and, hence, were not entitled to injunctive relief to

restrain its alleged violation.  See, also, *Saari* v. *Silvers*, 319 Mich 591.

If the land retained by the Summers following their conveyance to plaintiffs was not, while so owned, subject to the restrictions in question, the archbishop of the archdiocese of Detroit at the time of the purchase by him on September 21, 1942, did not acquire the parcel, expressly conveyed for religious and educational purposes, subject to the restrictions claimed by plaintiffs.  The same condition obtained with reference to the conveyance of the second parcel to said defendant in July, 1944.  It is not contended that such purchaser had any actual knowledge of the restrictions set forth in the deed to the plaintiffs, nor is it contended that he could be charged with constructive notice of a personal undertaking on the part of defendants Summers in their deed to plaintiffs to insert the restrictions in future conveyances of lots and parcels in the farm.

The bill of complaint filed by plaintiffs in this cause alleged that the use of the premises in question for church and school purposes would constitute an invasion of their property rights, and that they were entitled to injunctive relief to prevent irrevocable loss on their part.  On the trial of the case they apparently relied wholly on their alleged legal right. No proof was offered to show that the use of the property in question for religious and educational purposes would cause any depreciation in the value of plaintiffs' home or that they would otherwise sustain a financial loss.  The decree of the circuit judges who heard the proofs in the case was based on findings that plaintiffs' claim that they were entitled to reciprocal negative easements in the land retained by defendants Summers was not supported by the proofs, and that on equitable principles they were not entitled to the issuance of the discretionary writ of injunction sought by them.  Due consideration

should be given to such findings. *Clark* v. *Guy Drews Post of American Legion,* 247 Wis 48 (18 NW2d 322).

The determination of the trial court was correct, and the decree entered is affirmed, with costs to defendants.

BUTZEL, C. J., and BUSHNELL and SHARPE, JJ., concurred with CARR, J.

KELLY, J., took no part in the decision of this case.