# STATE OF MICHIGAN

# COURT OF APPEALS

---

WILLIAM GOULECHI, JOANNE GOULECHI, MICHAEL VUKICH, ISABEL VUKICH, ROBERT PACHLA, LAURIE PACHLA, DAVID STAPELS, MICHAEL MEGACNK, PETER FUCIARELLI, MARY FUCIARELLI, MICHAEL MAZZARA, ELIZABETH MAZZARA, NICK SOURIS, MARY SOURIS, MICHAEL KOUSTICK, and TINA KOUSTICK,

UNPUBLISHED
November 17, 2015

Plaintiffs-Appellants/Cross-Appellees,

v

No. 322489
Macomb Circuit Court

PHILLIP SERRA and CANDY SERRA,

LC No. 2012-005578-CZ

Defendants-Appellees/Cross-Appellants.

---

Before: SHAPIRO, P.J., and O'CONNELL and GLEICHER, JJ.

PER CURIAM.

The residents of the Buckingham Forest Subdivision took offense when defendants moved into the neighborhood, bought an abutting lot outside the subdivision, and began to use it in a manner inconsistent with neighborhood rules. They filed suit, but the trial court summarily dismissed their nuisance claim and determined in a bench trial that defendants had not violated the covenants and restrictions attached to their deed. Defendants thereafter sought attorney fees as a sanction for plaintiffs' allegedly frivolous lawsuit, which the court denied. Because plaintiffs' evidence was too cursory to support a nuisance claim and did not establish a violation of any applicable deed restriction, we affirm. As plaintiffs' claims had arguable legal merit, we also affirm the lower court's refusal to impose sanctions.

## I. BACKGROUND

This case centers on property within and abutting the Buckingham Forest Subdivision in Shelby Township. In 2000, Donald and Carolyn Todd purchased a home on Lot 7 in the subdivision from Scott and Deirdre Norine. In 2002, the Todds purchased a landlocked lot that abutted their backyard but was not part of the platted subdivision from Richard and Betty

-1-

Robbins. This parcel is referred to as the "back lot." Following Donald's death, Carolyn executed a single quitclaim deed to transfer both properties to her trust. Then, on February 9, 2011, the trust transferred its interests to both Lot 7 and the back lot to defendants Phillip and Candy Serra "[s]ubject to easements and building and use restrictions of record."

Upon taking residence, the Serras hired a contractor to install a second driveway on Lot 7 to connect the back lot to the street. This driveway traversed the side yard on the north side of the house, abutting the northerly neighbor's grass-covered side yard. When the Serras moved in, the back lot was wooded. Beginning in the summer of 2012, and spanning approximately six months, the Serras worked to remove 150 to 200 trees. The tree removal revealed a shed on the property. The tree removal also changed the grade of the back lot, although the Serras subsequently landscaped. Thereafter, the Serras parked a tractor and a large trailer used to transport snowmobiles by the shed on the back lot.

Plaintiffs are the Serras' neighbors in the Buckingham Forest Subdivision. They allege that the Serras' tree removal completely changed the feel of their quiet neighborhood. During the process, dust, noise, and ground vibrations negatively impacted their lives. After, the neighbors were forced to view unsightly equipment parked on the back lot and traffic on the Serras' second driveway disturbed the peace of the northerly neighbors.

Accordingly, on December 9, 2012, plaintiffs filed suit against the Serras, raising claims of nuisance and gross negligence, alleging that the Serras' actions violated covenants and restrictions in their deed, and seeking injunctive relief. The court summarily dismissed plaintiffs' nuisance claim. Following a bench trial, the circuit court entered a judgment of dismissal of the remaining claims, finding that plaintiffs had not met their burden for relief. This appeal followed.

## II. ANALYSIS

### A. SUMMARY DISMISSAL OF NUISANCE CLAIM

Plaintiffs first argue that the trial court erred in summarily dismissing their nuisance claim. We review such challenges de novo. *Ter Beek v City of Wyoming*, 495 Mich 1, 8; 846 NW2d 531 (2014). The Serras moved for summary disposition under both MCR 2.116(C)(8) and (10), but the court did not identify the subrule upon which it relied. As the court considered evidence beyond the pleadings, we treat the motion as granted under (C)(10). *Cuddington v United Health Servs, Inc*, 298 Mich App 264, 270; 826 NW2d 519 (2012). A (C)(10) motion tests the factual support of the complaint. *Hanlin v Saugatuck Twp*, 299 Mich App 233, 239; 829 NW2d 335 (2013). Summary disposition is appropriate when "there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law." *McCoig Materials, LLC v Galui Constr, Inc*, 295 Mich App 684, 693; 818 NW2d 410 (2012).

Nuisance is an interference with a landowner's use and enjoyment of his property interest. *Adams v Cleveland-Cliffs Iron Co*, 237 Mich App 51, 59-60; 602 NW2d 215 (1999). There are "two distinct versions" of nuisance claims—public and private. *Adkins v Thomas Solvent Co*, 440 Mich 293, 302; 487 NW2d 715 (1992). There is no dispute that plaintiffs' claims sound in private nuisance, i.e., "a nontrespassory invasion of another's interest in the

private use and enjoyment of land." *Id.* To support a private nuisance claim, the plaintiff must show:

> (a) [he] has property rights and privileges in respect to the use or enjoyment interfered with, (b) the invasion results in significant harm (c) [defendant's] conduct is the legal cause of the invasion, and (d) the invasion is either (i) intentional and unreasonable, or (ii) unintentional and otherwise actionable under the rules governing liability for negligent, reckless, or ultrahazardous conduct. [*Capitol Props Group, LLC v 1247 Ctr Street, LLC*, 283 Mich App 422, 431-432; 770 NW2d 105 (2009).]

Recovery for nuisance is appropriate only when there is a "*substantial* and *unreasonable* interference with the plaintiff's right to quiet enjoyment." *Adams*, 237 Mich App at 72 (emphasis in original). This interference must cause "significant harm." *Capitol Props Group*, 283 Mich App at 432.

Where there exists undisputed or uncontradicted evidence, whether a condition amounts to a nuisance is a legal determination for the court, not the jury. *Bluemer v Saginaw Central Oil & Gas Serv, Inc*, 356 Mich 399, 413-414; 97 NW2d 90 (1959); *People v Severance*, 125 Mich 556, 561; 84 NW 1089 (1901). A nuisance per se "is an act, occupation, or structure which is a nuisance at all times and under any circumstances, regardless of location or surroundings;" a nuisance in fact becomes a nuisance "by reason of circumstances and surroundings." *Bluemer*, 356 Mich at 411 (quotation marks and citation omitted).

In challenging the Serras' motion, plaintiffs presented a series of identical affidavits from various neighbors, an April 26, 2013 complaint form filed with the Township regarding standing water on the back lot, and a picture of a semi-sized trailer parked on the back lot. The affidavits described a tractor parked on the back lot as commercial-grade equipment used "to grade property, to lift heavy loads, pull down trees, etc." Such equipment, plaintiffs averred, "does not belong in a quiet residential neighborhood." Plaintiffs accused the Serras of leaving their work on the back lot "incomplete," "with an open trench and mounds of dirt, allowing standing water throughout." The view of "the shed and the construction equipment, such as the large red trailer and tractor . . . along with the noise and other activities . . . transformed our once tranquil residential community into an unpleasant environment" and destroyed "its peaceful serenity," plaintiffs accused.

Plaintiffs' allegations were simply too cursory to support their claim. Plaintiffs made no attempt to satisfy the "significant harm" element of their nuisance claim. They cited no particular harms, such as health impacts, structural damage, or reduction in property values. See *Adkins*, 440 Mich at 305, quoting Prosser & Keeton, Torts (5th ed), § 7, pp 622-623. Plaintiffs failed to meet their burden of showing substantial harm as well. To be considered substantial, "nuisance [law] normally required some degree of permanence." *Adkins*, 440 Mich at 308. Plaintiffs did not identify when the nuisance began. And the "incomplete" work on the back lot, without a temporal frame, sounds like a "temporary and evanescent" condition that could not support a nuisance claim. See *id.* Overall, plaintiffs' conclusory allegations failed to demonstrate conduct that rose to a level of substantial and unreasonable interference with their

quiet use and enjoyment of their property. Accordingly, the trial court did not err in granting the Serras' summary disposition motion.

## B. BACK LOT WAS NOT SUBJECT TO DEED RESTRICTIONS

In determining that plaintiffs had not presented a viable cause of action, the court ruled that the subject back lot was not part of the Buckingham Forest Subdivision and therefore was not subject to the same deed restrictions as the Serras' Lot 7. Plaintiffs argued below and continue to contend on appeal that by virtue of the Serras' common ownership of Lot 7 and the back lot, the entire property is subject to the subdivision's deed restrictions pursuant to the doctrine of reciprocal negative easements. We review for clear error a trial court's factual findings following a bench trial and conclusions of law de novo. *Scholma v Ottawa Co Rd Comm*, 303 Mich App 12, 16; 840 NW2d 186 (2013).

Generally, restrictions regarding the use of property must be in the conveyance upon which the title to that property rests. *Denhardt v De Roo*, 295 Mich 223, 228; 294 NW 163 (1940). "Where there is no express restriction in the chain of title of the particular lot the use of which is sought to be restricted, there must be proof of a 'scheme of restrictions' originating from a common owner." *Id*. (citation omitted). The scheme must arise from a common grantor; it cannot be created by other lot owners conforming to a general plan. *Id*. at 229. When a "scheme of restrictions" is applied to property whose title chain includes no such restrictions, a reciprocal negative easement is born. To find a reciprocal negative easement,

> [t]here must have been a common owner of the related parcels of land, and in his various grants of the lots he must have included some restriction, either affirmative or negative, for the benefit of the land retained, evidencing a scheme or intent that the entire tract should be similarly treated. Once the plan is effectively put into operation, the burden he has placed upon the land conveyed is by operation of law reciprocally placed upon the land retained. In this way those who have purchased in reliance upon this particular restriction will be assured that the plan will be *completely* achieved. [*Lanski v Montealegre*, 361 Mich 44, 47; 104 NW2d 772 (1960) (emphasis in original).]

Plaintiffs presented into evidence a "Declaration of Covenants and Restrictions for Buckingham Forest Subdivision." The second page of this document specifically indicates that the declaration covers only "Lots 1 through 16" in the Buckingham Forest Subdivision. Despite this language, plaintiffs wish to apply to the Serras' back lot deed restrictions against erecting sheds without approval of the subdivision's architectural control committee and against parking vehicles other than regular passenger vehicles outside of one's garage. To do so, plaintiffs had to establish the existence of a reciprocal negative easement.

It is true that the Serras took ownership of Lot 7 and the back lot in a single deed. However, the developer who drafted and recorded the covenants and restrictions expressly stated that they applied to lots 1 through 16 of the platted subdivision. There is no evidence that the developer was the common owner of the back lot and the subdivision land such that the sale to defendants' predecessors-in-interest—the Robbins and then the Todds—could result in a reciprocal negative easement. No language in the deed restrictions demonstrates that the

developer contemplated that adjoining property would be purchased by a lot owner and that he could impose the deed restrictions on those subsequent purchases. Thus, the trial court did not err in dismissing the deed restriction violation claim with respect to the back lot property.

## C. THE INSTALLATION OF THE SECOND DRIVEWAY WAS NOT A VIOLATION

Plaintiffs finally assert that the trial court erred in concluding that the Serras did not violate deed restrictions regarding setbacks when installing their second driveway on Lot 7.

"A deed restriction represents a contract between the buyer and the seller of property." *Bloomfield Estates Improvement Ass'n v City of Birmingham*, 479 Mich 206, 212; 737 NW2d 670 (2007). "If a deed restriction is unambiguous, we will enforce that deed restriction as written unless the restriction contravenes law or public policy, or has been waived by acquiescence to prior violations . . . ." *Id.* at 214. Restrictive covenants should be viewed in light of the surrounding circumstances, including the time they were made, their location and character to the entire tract of land, and the purpose for the restriction. *Webb v Smith*, 204 Mich App 564, 570; 516 NW2d 124 (1994).

The relevant deed restriction provides, in pertinent part:

### 8. Minimum Set Back and Yard Requirements

No *building* shall be located on any lot nearer than thirty (30) feet to the front site line or closer than thirty-five (35) feet to the rear site line. All *buildings* shall be erected so as to provide two (2) side yards in accordance with the following minimum setback requirements: (A) the total minimum width of both side yards shall equal not less than twenty (20) feet; (B) the minimum width of each side yard shall equal not less than eight (8) feet; (C) the minimum distance *between principal buildings* located on adjoining sides shall not be less than twenty (20) feet. When rear yards abut side yards, the minimum width of each side yard abutting upon a street shall not be less than (30) feet. [Emphasis added.]

The application of this provision centers on the meaning of "building." Where a term is not defined in a deed restriction, we will give that term "its commonly used meaning." *Bloomfield Estates*, 479 Mich at 215 (quotation marks and citation omitted). A "building" is defined as "a [usually] roofed and walled structure built for permanent use (as for a dwelling)." *Merriam-Webster's Collegiate Dictionary* (11th ed), p 162. A driveway does not fit within this definition.

Contrary to plaintiffs' position, there is no indication that the second driveway violates the setback requirements. The plain language of the deed restriction refers to distances from *buildings*. Nothing in the restriction precludes the installation of driveways, or shrubs, or any

other object in a home's side yard.[1]  Accordingly, the trial court did not err in finding that defendants' second driveway did not violate the deed restrictions and in concluding that plaintiffs' claim therefore lacked merit.

## D. CROSS-APPEAL

The Serras filed a cross-appeal contending that the trial court should have granted their pretrial motion to dismiss plaintiffs' claims in their entirety or should have granted their motion for a directed verdict after plaintiffs presented their case-in-chief.  The Serras continue by challenging the court's decision to allow plaintiffs to amend their complaint midtrial.  Because the Serras ultimately prevailed on the merits with respect to all of plaintiffs' claims, and we have affirmed the trial court's decisions, these issues are now moot.  See *In re Contempt of Dudzinski*, 257 Mich App 96, 112; 667 NW2d 68 (2003) ("Where a subsequent event renders it impossible for this Court to fashion a remedy, an issue becomes moot.").  Accordingly, we decline to address them.

The Serras further contend that the trial court should have granted their motion for attorney fees under MCL 600.2591(3)(a) on the ground that plaintiffs' complaint was frivolous.  We review for an abuse of discretion a trial court's decision whether to award of attorney fees and costs.  *Moore v Secura Ins*, 482 Mich 507, 516; 759 NW2d 833 (2008).  We review for clear error the trial court's underlying factual findings regarding the frivolity of an action.  *Kitchen v Kitchen*, 465 Mich 654, 661; 641 NW2d 245 (2002).

An action is "frivolous" if the plaintiff's "primary purpose in initiating the action or asserting the defense was to harass, embarrass, or injure the prevailing party," the plaintiff "had no reasonable basis to believe that the facts underlying [its] legal position were in fact true," or the legal position raised "was devoid of arguable legal merit."  MCL 600.2591(3)(a).  The mere fact that a plaintiff does not prevail in its action does not automatically equate with frivolity.  *Kitchen*, 465 Mich at 662.  Plaintiffs presented an honest challenge to the meaning and application of the Buckingham Forest Subdivision deed restrictions.  We discern no ground to find the complaint so without merit as to warrant such relief.

We affirm.  As the prevailing parties, the Serras may tax costs pursuant to MCR 7.219(A).


/s/ Douglas B. Shapiro
/s/ Peter D. O'Connell
/s/ Elizabeth L. Gleicher

---

[1] At trial, plaintiffs argued that as the general language of the deed restrictions refers to one attached garage, there is an implication that only one driveway is permitted.  This implication does not comport with the plain language of the document, however.